Allen, J.
This case presents for consideration a question of very great interest, frequently discussed elsewhere, but never formally decided by this court. Our statute of wills is a transcript of the statute of 29 Charles 2, with the exception that it dispenses with the subscribing witnesses in cases of wills wholly in the handwriting of the testator, a provision not contained in the English statute. The statute of 29 Charles 2, required that the will should be in writing; signed by the devisor, or some other person in his presence, and by his direction; and that it should be attested and subscribed by three or more credible witnesses in his presence. About four years after the statute was passed, it was determined in the case of Lemayne v. Stanley, 3 Levintz 1, that as the statute does not appoint where the will shall be *474 signed, in the top, bottom, or margin, a signing in any part is sufficient. Stanley wrote his will with his own hand, but did not subscribe his name thereto, but only put his seal; and the instrument was subscribed by four witnesses in his presence. See a statement of the case in Freeman 538; Powell on Devises 74. Though the correctness of this construction of the terms of the statute had been frequently questioned in subsequent cases, and by elementary writers, it had never been overruled, and Lemayne v. Stanley continued to be recognized as authority in England until the recent statute 1 Vict. ch. 26, $ 9, required that wills shall be signed at the foot or end thereof.
Our courts have uniformly acted on the principle, that when an English statute, which has received a settled construction, is re-enacted here, the legislature, it is to be presumed, designed to adopt it as construed. This consideration seems to have influenced chancellor Wythe in Bailey v. Treacle, Wythe’s Rep. 8, and the judges of the general court in Coalter v. Selden, 2 Va. Cases 553. Judge Tucker, however, in his Commentaries on Blackstone, book 2, ch. 19, p. 291, commenting on the decision in Lemayne v. Stanley, after remarking that it is admitted on all hands this has strained the statute very hard, proceeds to observe, “ that no great evil could exist in England from considering signature at the top sufficient, when the whole will is written by the testator, for though so written it must be published and attested, and when that is done it is complete, and until done it is incomplete. Thus identity is attained by handwriting, and completeness by publication. But to translate this decision into our courts might produce serious inconvenience.”
So, too, judge Lomax, in 1 Lomax on Ex’ors and Adm’rs 22, treating of this subject, says, “in Virginia, where a paper without attestation at all, or any distinct act of publication, if it be wholly written by the tes *475 tator, may be a valid will; there may be serious objeclions to allowing a name written by the testator at the beginning of the paper, and without any subscription at the end, to be taken as a signing.”
In Sharp v. Sharp, 2 Leigh 249, Coalter, J. in allusion to this subject, remarks, “ that a publication and name thus written” (in the beginning of an attested will,) “seem there to be considered a good signing, but I believe that is not enough here, inasmuch as without a signature to an olograph will of lands, there would be no such evidence of a concluded and final act.”
These extracts from the opinions of judges, and the most learned commentators on our laws, shew that the law is still considered unsettled in Virginia ; at least so far as regards unattested wills. That notwithstanding the opinions of the judges in Coalter v. Selden, (where the will however was not established,) no construction in respect to olograph wills has been so generally acquiesced in as to have become a rule of property, governing the titles of the country, and which ought not therefore to be disturbed.
Much of the difficulty which has occurred in the discussions upon this question with us, proceeds as it seems to me from analogies drawn from the cases decided in the ecclesiastical courts, touching wills of personalty. The only requisite there, is that the will should he in writing. And whilst with us, an instrument, though not good as a devise of real estate, might still be admitted to probate as a will of personalty, the distinction between the two classes of instruments was not kept sufficiently in view. The act of 1840 requires written wills, whether of real or personal estate, to be executed with the same solemnities. That law governs this case, and relieves us from many of the inconveniences growing out of the admission of parol testimony to prove the testamentary intent. The will, whether of realty or personalty, is a statutory disposition of the property. The very paper must have been intended as and for the *476 last will. Where the legal formalities are complied with, h stands as the last will, unless cancelled or revoked in the mode prescribed. If those formalities are wanting, parol testimony as to testamentary intent cannot supply the defect. It is the policy of the law to guard against setting up or destroying wills by such testimony, generally consisting of loose conversations of the testator, easily forgotten, often misunderstood, and apt to be misrepresented, and to substitute certain definite acts, to be evidenced by prescribed formalities, and to which, when so performed, the law itself attaches the testamentary intent. The enquiries now to be made in regard to a paper offered for probate, relate to the connection of the instrument with the testator so as to guard against forgery, the presence of those formalities required to establish its finality, and the sanity and freedom of the testator to shew his knowledge of the character of the act, his capacity to do it, and the absence of all improper constraint and influence.
In attested wills the connection between the testator and instrument, is shewn by the signing. Where the attesting witnesses prove he signed the instrument, or another in his presence by his direction signed it for him, the fullest evidence is obtained that the very paper produced is the one executed.
The force of this evidence was somewhat impaired, when the courts held that it was not necessary the subscribing witnesses should see him sign, provided he acknowledged the signature to the paper they attested; as a mere acknowledgment was not so likely to be impressed on the mind as a formal execution in their presence.
As the identity or connection of the instrument with the testator, is the main fact to be determined by the proof of signing, there was not much danger to be apprehended, in considering a signing of such a will at the top, the whole being in his handwriting, as a sufficient signing. Proof of the handwriting of itself connected the testator with the instrument, and that proof *477 was aided by the acknowledgment of the testator in the presence of the subscribing witnesses. The main fact of connection was more satisfactorily established by the kind of proof held sufficient in Lemayne v. Stanley, than by the mere acknowledgment of the signature in the presence of the subscribing witnesses who did not see him sign; and yet proof of such acknowledgment has been deemed sufficient in all the later cases.
The connection of the testator with the instrument being thus ascertained in the various modes adverted to, the finality of an attested will is established by the publication and attestation. No man publishes an instrument as his last will and testament, and calls on witnesses to attest the fact, until he has completed the act. The attestation must be annexed or subscribed to a complete instrument, and to which, when so subscribed, no additions can be made. To the act itself the law attaches testamentary intent, that it is a concluded instrument, and if the party is under no restraint, acts freely, and is of sane mind, no further proof is requisite to sustain the instrument as a will; and no proof other than a revocation in the mode prescribed, will be received to shew a change of testamentary intent.
In re-enacting this law, our legislature incorporated with the English statute the provision authorizing olograph wills, and uses the word “ signing” as applicable to both classes of wills. It is very manifest, the legislature in respect to both classes, intended to provide that such formalities should be present, as to afford proof upon the face of the instrument, of identity, or connection with the testator, and of finality; to which proof the law attached testamentary intent, so as to close the door upon all such enquiries, the fruitful source of frauds and perjuries.
The first fact, identity or connection of the instrument with the testator, is attained by proof of handwriting ; one degree weaker than the proof required in *478 Lemayne v. Stanley; for there was acknowledgment |-)efore -witnesses in. addition. Yet it was deemed sufficient in olograph wills to guard against the setting up f°rged papers as wills of decedents. For, though a signature may be readily forged, there would be much difficulty in successfully imitating the handwriting of another throughout the whole instrument. The handwriting, therefore, including the name of -the testator, written by himself at the top, or in the body of the instrument, furnished the proof in unattested wills, which is furnished by the signing, in attested wills; and if this were the only function of the “signing” in olograph wills, then there would be conclusive reason for holding that a signing, which was sufficient to furnish this statutory proof in one class of wills, must be equally sufficient to establish precisely the same fact in the other class. But in olograph wills, signing does accomplish another and most important object. It furnishes the proof, and generally, the only proof, of which the fact is susceptible, that the act is a complete, concluded act. Where an instrument is produced, proved to be in the handwriting of the deceased, shewing upon its face that it was a concluded instrument, with his name subscribed at the end thereof, the sanity and freedom of the testator being proved, is not the proof complete ? Does it not close the door upon any parol proof as to a change of testamentary intent, as fully and effectually as the proof of the due execution, publication and attestation of an attested will does ? This was certainly the intention of the legislature when they passed the law. But would any degree of proof short of the formalities prescribed for the execution of an attested will suffice, though aided by the strongest proof of testamentary intent ? Suppose a will not in the testator’s handwriting, but signed by him and attested by one witness, could it be admitted to probate by proof of testamentary intent ? Fifty witnesses might be produced to prove the intent *479 so to dispose of the estate ; the moral conviction that he intended that for his will might amount to absolute certainty; and yet no court could listen to such proof in aid of the legal proof required by the statute. When the formalities are present, parol testimony cannot be heard against the will, for that would be to hear parol testimony against the statute. When they are absent, parol testimony cannot be heard to supply their place, for that would be to make wills for men in a manner not recognized by law.
What evidence of finality is afforded by an olograph will, with the name inserted in the top, nothing on the face of the paper indicating it was put there to authenticate it as a signing, but clearly introduced there of necessity, to make sense of the document ? None whatever. The instrument may seem to be fully written, may contain a disposition of the entire estate, may contain a clause appointing executors, and a residuary clause, be dated, but yet wanting a signature shewing on the face of the instrument an authentic signing—who can say it is a complete, concluded act? Who can determine whether it was not a draft, laid aside for further consideration or consultation ? No court upon the mere production of such an instrument, and proof of handwriting alone, would without further proof as to place where found, and the declarations of the testator, admit the instrument to probate. It was conceded in argument that such parol proof might be adduced upon the question of testamentary intent. The concession, indeed, necessarily follows from the proposition contended for. The signing in the body of the instrument, from its nature is an equivocal act. The most that can be predicated of it is, that it may or may not have been intended as a signing to authenticate the instrument, and that intention must be made out by other testimony. This at once is conclusive in my mind to shew that such a signing, is not the signing contemplated by the *480 legislature, at least as respects olograph wills. For, if ^ jnten(je(j to map;e the handwriting and signing in unattested, equal to the signing, publication and attestation, attested wills, and if it attached to these formalities in attested wills the testamentary intent, the same consequence must follow in olograph wills. When, therefore, it is admitted in any given case that the formalities established, do not prove testamentary intent, that something further and in addition to those formalities, must be adduced to satisfy the mind that the paper in question was a concluded act, and was intended to be a final disposition of his estate, without any thing more, the paper in question is not a will executed according to the statute, and cannot be received as a statutory disposition of the estate.
By Lemayne v. Stanley, I concede I am bound, when such a case, relating to attested wills, may arise. And I admit the force of the argument that when the legislature used the word “ signed” in the same connection as it respects both classes of wills, it ought to receive the same construction. Were it an original question, I would give the word the same construction, as it regards both classes of instruments; and hold no signing to be sufficient, except where it appeared affirmatively upon the face, or from the frame of the instrument, the signing was intended to be a signing to give authenticity to the document. But the statute, before its adoption here, received a construction with reference to the meaning of the word as relates to attested wills, condemned by all the English jurists, and at length changed by statutes in England and New York. I do not conceive we are bound to extend an admitted erroneous construction to another class of wills, when by doing so we defeat the leading intent of the legislature in regard to this whole class of wills; the letting in, indeed the making necessary, the introduction of parol testimony to establish the finality and completeness of the act. These conse *481 quences do not follow the construction given in Lemayne v. Stanley, when confined to attested wills, and, therefore, the construction does not conflict with the policy of the act to avoid frauds and perjuries, by excluding parol testimony as to the intentions of the deceased. In view of these results, I think, we are fully justified in giving the word “ signing” its natural and appropriate meaning, as applied to unattested wills, and that we may do so, though yielding to the authority of Lemayne v. Stanley, when a similar case occurs.
I do not wish, however, to be understood as holding a literal signing at the foot or end of the instrument as absolutely necessary in all cases. The signing must be such as, upon the face, and from the frame of the instrument, appears to have been intended to give it authenticity. It must appear that the name, so written, was regarded as a signature ; that the instrument was regarded as complete without further signature. And the paper itself must shew this. This is in conformity with the rule in respect to another branch of the statute of frauds as now established in England. In Hubert v. Turner, 41 Eng. C. L. R. 194, the question was, whether an agreement was signed so as to be binding within the statute of frauds. Tindall, C. J. said, “ The names of the parties, it is true, are introduced into the body of the instrument; and we will assume, so introduced, by their authority ; but those names must have been introduced of necessity to make sense of the document, and it is impossible to say from the frame of this instrument, that the parlies did not intend to have put their signatures to it, before it was supposed to be complete.”'
The rule, thus guarded, is safer than if fixed by statute, for that would be inflexible. A testator may not have left himself room to subscribe his name at the end of the instrument; a signing under such circumstances at some other place, appearing upon the face of the document to have been a signing to authenticate the instru *482 ment, would be a sufficient signing. Other cases may . , be supposed.
In the case under consideration, it is sufficient to say, it does not appear on thé face of the paper, that the signing at the beginning was intended or regarded as a signing to authenticate it, as a complete and final act. Not so appearing, it is not a statutory will, and, therefore, I do not deem it necessary to consider or look into , the parol evidence touching the testamentary intent as evidenced by the declarations of the deceased.
Upon that evidence, however, I feel no doubt in saying that the testator did not regard this as a complete and final act, and that it would not justify the establishment of this paper as the last will of the deceased.
I am for reversing the sentence and rejecting the paper.
Baldwin, J. concurred in the opinion of Allen.