Daniel, J.
The fourth section of the chapter on wills, in the Code of 1849, p. 516, declares that “ no will shall bé valid unless it be in writing and signed by the testator, or by some other person in his presence and by his direction, in such manner as to make it manifest that the name is intended as a signature; and moreover unless [it] be wholly written by the testator, the signature shall be made or [the will] acknowledged by him in the presence of at least two [competent] witnesses present at the same time; and such witnesses shall subscribe the will in the presence of the testator, but no form of attestation shall be necessary.”
On comparing this section as it now stands in the Code, with the corresponding section reported by the revisors, (see Report of Revisors, p. 624,) it will be seen that the legislature have adopted the precise language of the revisors in all that relates to the manner in which the signature of the testator is to be made— the only departures, in the section as enacted, from the same as reported, being, that in the second clause the revisors refer to the will by the terms “ the instrument,” whilst the legislature use for the same purpose the demonstrative pronoun “it;” that whilst the revisors required that “ the signature” should “ be made or acknowledged,” the section as adopted declares that “ the signature shall be made or the will acknowledged” *666 in the presence, &c.; that the legislature have inserted the word “ competent” before the word “ witnesses,” and have substituted the words “ attest and subscribe” by the word “ subscribe” alone; and have also dropped from the section the last clause or sentence found in that reported by the revisors, declaring that “ a will so executed shall be valid without any other publication thereof.”
It will be further seen on looking to the report of the revisors, p. 624, that in a note to the first clause of the section, they say, “ This conforms to the decision in Waller v. Waller, 1 Gratt. 454, and is thought to be better than an arbitrary rule requiring the signature at the foot or end of the paper.”
In Waller v. Waller the will was wholly in the testator’s handwriting, and commenced, “ In the name of God, amen. I, John Waller,” &c. It disposed of all the testator’s property, and was in all respects formal and complete, with the exception that it concluded, “ In witness whereof, I have hereunto set my hand this day of 1841.” “ Signed and acknowledged in the presence ofand that it was never attested by witnesses nor further signed by the testator. This court reversed the sentence of the Superior court of Henry admitting the will to probat. The substance of the opinions of the several members of this court, and of the decision, is succinctly and correctly stated by Judge Lomax in the 3d volume of his Digest, (new ed.) at p. 39, 40. He says, “ In the opinion delivered by Allen, judge, with the concurrence of Baldwin, J. the principle of Lemayne v. Stanley, in relation to olograph wills in Virginia, was much discussed. According to that opinion the finality of the testaméntary intent must be ascertained from the face of the paper, and extrinsic evidence is not admissible either to prove or disprove it. The signing of a will, to be a sufficient signing under the statute, *667 must be such as upon the face and from the frame of the instrument appears to have been intended to give it authenticity. It must appear that the name was regarded as a signature, and that the instrument was complete without further signature; and the paper itself must show this. Stanard, J. expressed no opinion but concurred with the other judges in favor of reversing the judgment of the court below which had admitted the instrument to probat as a will. Brooke, J. dissented. Cabell, P. said that the paper propounded as the will of John Waller bore upon the face of it internal evidence that he did not regard it as a final and concluded act. It was manifest from the paper itself, that he intended something further to be done; that it should be signed and acknowledged in the presence of witnesses. He did not therefore intend that paper, which was not signed (by subscription) and acknowledged, to be his will. To that extent we may suppose there was an agreement of all the judges, who concurred in the judgment of reversal, which was rendered.”
The difference between the opinions of Judges Allen and Cabell would thus seem to be that the former held no signing of an olograph will to be sufficient except when it appeared affirmatively upon the face or from the frame of the instrument that the signing was intended to be a signing to give authenticity to the paper; whilst the latter, without indicating whether he could or could not go to that extent, was of opinion that when it appeared from the face of the paper that the testator intended something farther to be done, (which intention he held was made apparent in that case by the presence of the “In testimonium.” clause and the absence of any attestation by witnesses and of any subscription or further signature of his name by the testator,) the paper ought not to be regarded as a final and concluded act. In the opinion *668 of the former the signing in the body of the instrument was from its nature an equivocal act, which required to be explained by some further evidence, apparent on the face of the paper, of the testator’s intention thereby to authenticate it, before it could have that effect, whilst the opinion of the latter went only to the extent of holding that when, in such case, the finality of the act was negatived by other internal evidence that the testator did not regard the instrument as a concluded act the signature in the body of the will was not sufficient. And as Baldwin, J. alone concurred in the opinion of Allen, J. and Stanard, J. gave no reason for concurring in the judgment reversing the sentence admitting the will to pro-bat, whilst Brooke, J. dissented, the decision, it must be conceded, cannot be held as declaring any principle broader than that announced in the opinion of Judge Cabell. Still, when it is considered that the decision in Lemayne v. Stanley, though generally followed in England and in most of the states of the Union, where the act of 29 Charles 2 has been adopted, has been regarded by some of the most learned and eminent elementary writers and judges in both countries, as at war with the plain and obvious meaning of the statute, letting in many of the most serious evils which it was the design of the statute to avoid; that, in order to cure these evils and to shut out all doubt as to the meaning, office and force of the signature, it became necessary in England so to change the law by legislative enactment as to require that the “will shall be signed at the foot or end thereofthat like enactments with the like end in view, had been passed in New York and Pennsylvania; that the law upon the subject in this state, (at least in respect to olograph wills,) had been left, by the cases of Selden v. Coalter, in the General court, 2 Va. Cas. 553, and Waller v. Waller, in this court, in a most unsettled condition; *669 that Judge Allen, in the course of his opinion in Waller v. Waller, adverted to the recent statutory changes just mentioned; that he declared himself in favor a rule requiring that the signature should be so made as that upon the face and from the frame of the instrument it should appear to have been intended to give authenticity to the paper, and argued to show that such a rule was preferable to a statute requiring the paper to be signed at the foot or end; assigning as a reason that the statute would be inflexible, whilst cases might arise of a signing at some other place, under such circumstances apparent on the face of the iustrument, as would be equally entitled to produce the belief that the signing was intended to authenticate the will; that the revisors, in their note already cited, whilst referring to the case of Waller v. Waller, also made evident allusion to the provision of the 9th section of ch. 26, 1 Vict. requiring the will to be signed at the foot or end, and recommended the scheme which they reported as better calculated to attain the end in view — When due weight is given to these considerations, there arises, I think, a fair inference that the legislature, in requiring that the will shall be signed “ in such manner as to make it manifest that the name is intended as a signature,” designed not merely to enact what had been decided in Waller v. Waller, but to furnish a rule in respect to the signature, which, whilst it would have all the certainty of the British statute, would, yet let in wills, which, though not signed at the foot or end, might be signed in such manner as to afford internal evidence of' authenticity equally convincing.
This view is sustained by Judge Lomax in the recent edition of his Digest. In commenting on the section of the Code now under consideration, he says, “ It now requires, in addition to what was expressed under the former law, that it shall be signed in such *670 manner as to make it manifest that the name is intended as a signature.” “ This expression was probably ■ inserted in approbation of the principle that was decided (but in which decision it may seem there was not an unanimity of the judges) in the case before referred to of Waller v. Waller, and to settle as far as general expressions can settle the law of particular cases, the doubts and difficulties in Selden v. Coalter, and which may often occur in cases of olograph wills. The design is rprobabl%j the same in effect as that which the English statute requires when it says that ‘ it shall be signed at the foot or end thereof by the testator.’ The manifest intention of the signature wherever placed being the rule of the Virginia statute; the signing at the foot or end being alone the index of the intention as the rule of the English statute of Victoria.” 3 Lom. Dig. 2d ed. § 35, p. 70. Whether in the effort to construe the words in question we look alone to their ordinary import and the context, or seek their interpretation in the state of the law existing at the time when the act was passed, and shown to have been brought to the notice of the legislature, and in the design which we thence deduce to have been contemplated by them, I think there is no serious difficulty in coming to the conclusion that the act recognizes no will as sufficiently signed unless it appears affirmatively from the position of the signature, as at the foot or end, or from some other internal evidence equally convincing, that the testator designed by the use of the signature to authenticate the instrument.
And as in the case under consideration the signing at the top alone, which from its nature is an equivocal act, is aided by no other evidence or explanation, on the face of the paper, showing that such signing was used for the purpose of ratifying and authenticating the contents of the instrument, I am of the opinion that the requirements of the act have not been com *671 plied with, and that the Circuit court erred in admitting the paper to probat.
I think that the sentence of the Circuit court should be reversed, and probat of the paper refused.
The other judges concurred in the opinion of Daniel, J.
Judgment reversed.