# Richmond.

## WARWICK v. WARWICK.

### JANUARY 30th, 1890.

1. WILLS—*Mode of execution—Signature.*—Code 1887, sec. 2514, provides that "no will shall be valid unless it be in writing and signed by the testator or by some other person in his presence, and by his direction, in such manner as to make it manifest that the name is intended to be as a signature."

2. IDEM—*Case at bar.*—A will wholly in testator's handwriting, beginning: "I, A. W., of the county of H., declare this to be my last will and testament," but nowhere else containing testator's name, was inclosed in a sealed envelope on which was written in testator's handwriting, "My Will—A. W.": *held*, not signed by testator.

Appeal from decree of circuit court of Henrico county rendered November 12, 1889, in a certain cause in chancery wherein Phœbe C. Warwick and Alletta H. Warwick, infants by, &c., were complainants, and Eliza Agnes Warwick, in her own right and as executrix of Abram Warwick, Jr., deceased, and others, were defendants. The decree being adverse to Eliza Agnes Warwick, she appealed. Opinion states the case.

*Tucker & Ingram,* for the appellant.

*Pegram & Stringfellow,* for the appellees.

LACY, J., delivered the opinion of the court.

This case is a contest concerning the alleged will of Abraham Warwick, Jr. The said will was in writing, written

wholly in the handwriting of the said Abraham Warwick, Jr., beginning with the words, " I, Abraham Warwick, Jr., of the county of Henrico, declare this to be my last will and testament," etc., but did not otherwise contain the signature or the name of the said Abraham Warwick, Jr., and was folded and inclosed in an envelope found in the desk of the said alleged testator, which was sealed with mucilage, and on the back of the envelope was written, also in the handwriting of the said Warwick, the following: " My Will—Abraham Warwick, Jr." It is admitted that the said Warwick was a man of sound mind, and there is no dispute concerning the construction of the said testamentary paper. The contest was upon the question as to the due execution of the said contested will.

The appellees, two of the next of kin and heirs-at-law and distributees of the said Abraham Warwick, Jr., deceased, filed their bill in the said circuit court of Henrico, claiming that the said Warwick died intestate, and that the said testamentary paper, which had been probated in the county court, was not the will of the said decedent, the same not having been signed by the supposed testator (although written wholly in his handwriting) in such manner as to make it manifest that the name is intended as a signature. The case was tried in the said circuit court, and the said will pronounced invalid, for the reason that, while wholly in the handwriting of the decedent, it was not signed in such a manner as to make it manifest that the name was intended as a signature. From this decree the appellant appealed. The sole question to be considered here is as to the due execution of the said will as prescribed by law. Section 2514 of the Code of Virginia provides as follows: " No will shall be valid unless it be in writing and signed by the testator or by some other person in his presence and by his direction, in such manner as to make it manifest that the name is intended as a signature; and moreover, unless it be wholly written by the testator, the signature shall be made, or the will acknowledged, by him in the presence of at least two compe-

tent witnesses present at the same time, and such witnesses shall subscribe the will in the presence of the testator, but no form of attestation shall be necessary." The will in this case was wholly written in the handwriting of the testator. No witnesses were therefore necessary, and none have subscribed the paper in question. So that, the capacity of the testator being conceded, the only question is as to whether the will is signed in manner required by law. We have seen that there is no signature appended to the will, nor does the name of the testator appear to the will except at the top and in the manner stated, the will commencing: "I, Abraham Warwick, Jr., of the county of Henrico, declare this to be my last will and testament," etc.

It is insisted by the learned counsel for the appellant that the name appearing thus at the top of the will, and the will being folded and inclosed in an envelope, which was sealed and indorsed, " My Will—Abraham Warwick, Jr.," it is thus made manifest that the signature was intended to be his signature, and they, at the trial, moved the court to instruct the jury " that if they believe from the evidence that the paper writing produced before them, dated January 13, 1888, and the indorsement on the envelope, and the signature to said indorsement, are wholly in the handwriting of the testator, then they shall find that the said paper writing, and the indorsement on said envelope, and the signature to said indorsment, constitute the last will and testament of Abraham Warwick, Jr., if the jury shall believe that the said Abraham Warwick, Jr., was, at the time of executing the said writing, of sound mind; " and insisted, in support of these instructions, that the signature in the beginning of the said will was a sufficient signing, the final intention of the said testator that this paper should operate as his last will being proved by the facts that it was inclosed in a sealed envelope, and by the ratifying and confirmatory words, " My Will—Abraham Warwick, Jr.," on the back of said envelope. But the court refused the said instruction, and gave

the following : " The court instructs the jury that, even if they believe from the evidence that the paper writing produced before them, dated the 13th day of January, 1888, and the indorsement, in the words, ' My Will—Abraham Warwick, Jr.' upon the envelope in which the said writing was inclosed, are wholly in the handwriting of said Abraham Warwick, Jr., deceased, they must nevertheless find that the said paper is not of itself, nor is any part thereof, the true and valid last will and testament of said Abraham Warwick, Jr., because it is an unusual mode of signing or authenticating a will as a concluded act by indorsing the name of a person executing and making it on the envelope in which it is inclosed ; and, such indorsement being at most equivocal, it does not appear that the said Abraham Warwick, Jr., signed his name in the body of the paper writing aforesaid, or upon the envelope in which said writing was inclosed, in such manner as to make it manifest that it was intended as a signature, as required by the statute in such case made and provided." Under this instruction of the court the jury found against the will, and the motion of the appellant to set aside the verdict was overruled by the court.

We have set forth above, the statute of this state upon this subject ; our several statutes upon this subject have been derived from the English statutes of 29 Car. II., ch. 3, sec. 5 ; 7 Wm. IV., 1 Vict., ch. 26 ; and 15 & 16 Vict., ch. 24. The statute of 29 Car. II., ch. 3, sec. 5, did not prescribe where the signature should be placed, and soon after the enactment of the statute it was determined in the case of *Lemayne* v. *Stanley*, decided in the court of common pleas at Easter term, in the 33d year of Charles II., 1682, that "a will written wholly by the testator himself, but not signed by him, was good ; * * * for, being written by himself, and his name in the will, it is a sufficient signing, within the statute, which does not appoint where the will shall be signed—in the top, bottom, or margin—and therefore a signing in any part is sufficient." 3 Lev., 1. " This

decision," says Mr. Minor, " was often regretted, but never directly overruled, until it was done by statute, both in England and in Virginia. It was agreed that the object in requiring the testator's signature, was two-fold, namely: (1) To connect him with the paper and (2) to afford proof of the finality or completion of the testamentary intent. It was admitted, also, that the first object was satisfactorily attained by the testator's signature occurring anywhere in the paper. But it was insisted that the second object was wholly frustrated by allowing the signature to be anywhere else but at the end, and, in response to the suggestion that the finality of testamentary intent was proved by the attestation of the subscribing witnesses, it was said that the statute designed two safe-guards— the attestation of the witnesses and the signature also, and that the courts thwarted the design of the legislature when they dispensed with either. 2 Bl. Comm., 376, 377, and note 9. The Virginia courts, like those of England, acquiesced reluctantly in *Lemayne* v. *Stanley* until November, 1818, when, in the case of *Selden* v. *Coalter*, 2 Va. Cas., 553, it was very gravely doubted whether the doctrine of that case was applicable to a will wholly written by the testator's own hand, which, by our statute, does not need to be attested by subscribing witnesses at all, for that there would then be no proof whatever, on the face of the will, of the finality of the testamentary intent. And afterwards, in 1845, in *Waller* v. *Waller*, 1 Gratt., 454, that doubt as to holograph wills was not a little strengthened, although the court still admitted that in an attested will it must follow *Lemayne* v. *Stanley*. Then, in 1850, came the statute (taken from 7 Wm. IV. and 1 Vict., ch. 26. See, also, 15 & 16 Vict., ch. 24) requiring, in the terms above stated, that the signature should be affixed in such a manner as to make it manifest that the name was intended as a signature." Speaking of this statute of July 1, 1850, Judge Lomax says: " It now requires, in addition to what was expressed under the former law, that it shall be signed in such manner as to make

it manifest that the name is intended as a signature. This expression was probably inserted in approbation of the principle that was decided (but in which decision, it may seem, there was not an unanimity of the judges) in the case of *Waller* v. *Waller*, and to settle, as far as general expression in a statute can settle the law of particular cases, the doubts and difficulties which are presented in *Selden* v. *Coalter*, and which may often occur in cases of holograph wills. The design is probably the same, in effect, as that which the English statute (1 Vict., ch. 26, sec. 9) requires when it says that it shall be signed at the foot or end thereof by the testator, the manifest intention of the signature, wherever placed, being the rule of the Virginia statute; the signing at the foot or end being alone the index of the intention as the rule of the English statute." Lomax Dig., 3, 70.

In the case of *Ramsey* v. *Ramsey*, 13 Gratt., 664, this statute of July 1, 1850, came under review in this court in the case of a will like this, lacking, however, the indorsement on the envelope: and Judge Daniel, delivering the opinion of this court, said: " Whether, in the effort to construe the words in question, we look alone to their ordinary import and the context, or seek their interpretation in the state of the law existing at the time when the act was passed, and shown to have been brought to the notice of the legislature, and in the design which we thence deduce to have been contemplated by them, I think there is no serious difficulty in coming to the conclusion that the act recognizes no will as sufficiently signed unless it appears affirmatively from the position of the signature, as at the foot or end, or from some other internal evidence equally convincing, that the testator designed, by the use of the signature, to authenticate the instrument. And as in the case under consideration the signing at the top alone, which, from its nature, is an equivocal act, is aided by no other evidence or explanation, on the face of the paper, showing that such signing was used for the purpose of ratifying and authenticating

the contents of the instrument, I am of the opinion that the requirements of the act have not been complied with." In the case of *Roy* v. *Roy*, 16 Gratt., 418, the will in question was like this, except that the paper upon which the will was written was folded up, and on the back, after it was folded, the paper was indorsed, "David M. Roy's Will," so that, when unfolded, the said indorsement appeared to be about the middle of the third page, the will having ended on the second page. Judge Allen said in that case, after citing *Ramsey* v. *Ramsey :* "It is an unusual mode of signing or authenticating a paper as a concluded act by indorsing the name of the person executing it on the back. Such indorsement is usually made as a label or mark, to distinguish it from other papers, and probably it never occurred to the deceased that it was to have any other function in this case. It is at most equivocal, and, being so, is ruled by the case of *Ramsey* v. *Ramsey, supra*." In England, the signing at the foot or end is alone the index of intention by the statute of Victoria, and the manifest intention of the signature, wherever placed, is the rule in Virginia.

The insertion of the name, "Abraham Warwick, Jr.," at the beginning, is an equivocal act; and, being so, it cannot be held to be such a signing of the paper as to make it manifest that it was intended as a signature. The indorsement on the envelope is not a signing of the will, and was doubtless not so intended by the deceased. The apparent object of indorsing an envelope or wrapper is for a label, to mark or designate the contents, but does not afford internal evidence that the signature on the back of the envelope was intended as a signature to the will. It was obviously not a signature to the will at all, and the result of all the authorities is that the finality of intention evinced by the signing must appear from the will itself. The statute says " *signed in such manner* as to make it manifest that the name is intended as a signature." And this court said, in the case of *Ramsey* v. *Ramsey*, that unless the name of the testator appears affirmatively, from something on the face

of the paper, to have been intended as a signature, it is not a sufficient signing under the statute. The signing required by the statute must manifestly appear to be intended as a signature from the face of the instrument, which must appear, by internal evidence, equally convincing as the signing at the foot or end; that it must be manifest. The finality of the testamentary intent must be ascertained from the face of the paper, and extrinsic evidence is not admissible either to prove or disprove it. The signing of a will, to be a sufficient signing under the statute, must be such as, upon the face of the instrument, appears to have been intended to give it authenticity. It must appear that the name was regarded as a signature, and that the instrument was complete without further signature; and the paper itself must show this, for the statute requires that the will shall be so signed—that is, signed in a manner to make it manifest that the name was intended as a signature. It is an equivocal act, as is well settled, to insert the name at the top or beginning, and extrinsic evidence is not employed to affect either *pro* or *con* the question of finality of intention, when this internal evidence, to be afforded by the face of the paper, is wanting. We think the decree of the circuit court of Henrico, rejecting the will, is without error, and the same will be affirmed.

DECREE AFFIRMED.