COLUMBIA M. BLACK, *et al.*

*v.*

CARRIE V. MAXWELL, *et als.*

(No. 9945)

Submitted January 20, 1948.  Decided March 16, 1948.

*Wm. T. O'Brien,* and *Herbert M. Blair,* for appellants.

*U. G. Young, Jr.,* and *Arnold, Crawford & Hyer* and *D. H. Hill Arnold,* for appellees.

HAYMOND, JUDGE:

This appeal presents the question of the validity, as a holographic will, of a document wholly in the handwriting of Frank P. Maxwell, a well to do resident of Upshur County, who departed this life on February 14, 1946. The written instrument in question bears date the 11th day

of February, 1946, and is attached to and pasted on a single sheet of paper upon which appear, also in the handwriting of the decedent, writings designated as his last will and testament dated September 8, 1944, and as a codicil to that will, dated February 9, 1946. Each of these two instruments concludes with the signature of the writer, F. P. Maxwell. The position of the instrument dated February 11, 1946, which bears no signature at the end, is at the bottom of the paper to which it is pasted so that the other two signed writings are above it on the single sheet upon which the three instruments appear.

The three writings were presented to the Clerk of the County Court of Upshur County for probate on February 21, 1946. Two of them, the writing dated September 8, 1944, and the writing dated February 9, 1946, each of which bears the signature of F. P. Maxwell at the end, were probated and admitted to record as the last will and testament of Frank P. Maxwell and the codicil to his last will and testament. The instrument dated February 11, 1946, and not signed at the end, was not probated but instead was filed as an extraneous or foreign paper. S. R. Harrison, Jr., named as executor in the codicil and in the instrument dated February 11, 1946, was appointed and qualified as executor of the instrument probated as the will. This action of the clerk was approved and confirmed by the County Court of Upshur County, by order entered by it on March 4, 1946.

On July 19, 1946, Carrie V. Maxwell, Harriet M. Jarvis and Emma F. Latham, three of the sisters and heirs at law of Frank P. Maxwell, who by inheritance would be entitled to share in the estate if the instrument dated February 11, 1946, is of no force or effect as a will, instituted in the Circuit Court of Upshur County against Blanche M. Harrison, also a sister and heir at law of the decedent, and numerous other persons interested in his estate, including the plaintiff in this suit, a suit in equity to partition the real estate of the decedent and for the appointment of a receiver to manage and preserve the real estate during the pendency of that proceeding.

On September 7, 1946, the original plaintiff in this suit, Columbia M. Black, a niece and an heir at law of Frank P. Maxwell, and also one of the main beneficiaries named in the written instrument of February 11, 1946, if it should be held to be his last will and testament, instituted this suit in equity against Carrie V. Maxwell and the other heirs at law of Frank P. Maxwell, S. R. Harrison, Jr., executor of the will and the codicil probated February 21, 1946, the other persons named as beneficiaries in the writing dated February 11, 1946, and the County Court of Upshur County and its members and its clerk, as defendants. The original bill of complaint, filed in open court on September 9, 1946, complained of the action of the county court and its clerk in probating the instruments dated September 8, 1944, and February 9, 1946, as the will of Frank P. Maxwell and in refusing to probate the instrument dated February 11, 1946, as his will. As part of the relief prayed for, it sought to have an issue *devastavit vel non* to determine whether the instruments admitted to probate constituted the complete last will and testament of Frank P. Maxwell, to set aside the probate of the foregoing two instruments, to have the three instruments dated September 8, 1944, February 9, 1946, and February 11, 1946, declared to be his true last will and testament and to require them to be probated as such, to enjoin the prosecution of the partition suit pending the determination of the issues presented in this suit, and to enjoin the executor from making any disbursements except those necessary to satisfy any preferred claims against the estate of the decedent. On October 4 the plaintiff filed an amended and supplemental bill of complaint by which she undertook to broaden the scope of this suit to permit the settlement of all matters relating to the three written instruments that could properly be heard and determined upon an appeal from the action of the county court to the Circuit Court of Upshur County with respect to the probate of those instruments. Porter Maxwell, Jr., another principal beneficiary named in the written instrument dated February 11, 1946, originally a defendant in this suit, filed his answer in which he admitted the allegations of both bills

of complaint and, upon request that he be transferred from a defendant to a plaintiff, became, by order entered by the trial court, a co-plaintiff with Columbia M. Black, who was the original plaintiff in this suit.

Eight of the defendants, Carrie V. Maxwell, Harriet M. Jarvis, Emma F. Latham, Blanche M. Harrison, sisters; Christine Thompson, a niece; Isaac H. Maxwell and Porter Jarvis, nephews; and S. R. Harrison, executor of the will of Frank P. Maxwell, on January 14, 1947, filed their demurrers in writing to the bills of complaint and in support of their demurrer assigned in substance these grounds:

1. The paper writing dated February 11, 1946, is not the last will and testament of Frank P. Maxwell and the cause of action based upon it must fail because: (a) It is not signed by Frank P. Maxwell; and (b) his name does not appear in it in such manner as to make it manifest that his name is intended as a signature, as required by Chapter 41, Article 1, Section 3, Code of West Virginia, 1931.

2. The bills of complaint are multifarious for the reason that the amended and supplemental bill of complaint seeks to convert the original bill of complaint, which undertakes to state an equitable cause of action, into a petition for an appeal from the order of probate of the county court, and that an appeal is a purely legal proceeding.

By final decree, entered February 1, 1947, the circuit court sustained the demurrer of the named defendants on the ground that the paper writing dated February 11, 1946, is not signed by Frank P. Maxwell and that his name does not appear in it in such manner as to make it manifest that it is intended as a signature, held the original bill of complaint and the amended and supplemental bill of complaint insufficient in law, dismissed the bills of complaint, and dissolved the injunction previously granted by the court. By the provisions of the decree the court refused to grant the plaintiffs additional time in which to incorporate in the original bill of complaint or in an amended and supplemental bill of complaint to be filed, an amendment relating to the envelope in which the three

writings were found after the death of Frank P. Maxwell which had been misplaced and lost by the executor or the husband of one of the defendants and had not been produced, and which the plaintiffs charge contained the entry or the notation "F. P. Maxwell's Last Will Feb. 11, 1946", and also refused to permit the amendment of the original bill at that time at the bar of the court by inserting in it the name of the husband of one of the defendants in the caption and making him a defendant to this suit in order that he be required to produce the envelope or explain its absence, and by incorporating the foregoing facts with respect to the missing envelope. From this final decree the plaintiffs obtained an appeal to this Court.

When Frank P. Maxwell wrote and signed the holographic instrument dated September 8, 1944, his wife Rita, and Hudson F. Farnsworth, the husband of his only child, a daughter, Virginia Lee Farnsworth, who died August 24, 1944, were living. Between September 8, 1944, and February 9, 1946, the date of the codicil to the foregoing will, his wife and his son in law both departed this life testate. Virginia Lee Farnsworth, having willed all her property to her husband, Hudson F. Farnsworth, died without issue. After her death, Hudson F. Farnsworth, the son in law of Frank P. Maxwell, having willed all his property to Frank P. Maxwell and Rita B. Maxwell, died on September 25, 1945. Rita B. Maxwell willed most of her estate to Frank P. Maxwell and departed this life on January 31, 1946. It is obvious that the deaths of these three persons within a period of approximately eighteen months, and particularly the death of his wife to whom he had willed all of his estate by the paper writing dated September 8, 1944, in the event she survived him, caused him to think of changing his will and prompted him to add the codicil dated February 9, 1946, and to write and attach to them the instrument dated February 11, 1946. The deaths of his wife and his son in law changed the situation which existed when he wrote the will dated September 8, 1944. There being no wife or no child to whom any interest in his property could pass by will or by operation of law, it appeared that his heirs and the beneficiaries of his estate

would consist of a different group of persons and that notwithstanding his will of September 8, 1944, his property would descend to them, unless he changed or revoked that document and made a different disposition of his estate by a new will.

The principal and controlling issue in this case is whether the written instrument dated February 11, 1946, is a valid testamentary writing of Frank P. Maxwell and constitutes, in whole or in part, his last will and testament.

The three writings, as they appear in the order of their dates on a single sheet of paper composed of three parts or sections pasted together, are in these words and figures:

"I F P Maxwell of Buckhannon Upshur Co West Virginia, being of sound and disposing mind hereby make, publish and declare this to be my last will and testament, *herby* revoking all wills by me at any time heretofore made.

"First I desire all of my just debts to be paid.

"Second. If my wife Reta B. Maxwell survives me, then I give devise and bequeath all of my estate, both real and personal and *whirsoover* situated to her in fee simple and absolutely.

"Third. I hereby nominate and appoint my wife Reta B. Maxwell executor of this my last will and testament, and I direct that no security be required of my wife as executor.

"Given under my hand this 8th day of September 1944.

F. P. Maxwell."

"Codicil to my will.

"I hereby appoint S. R. Harrison Jr to be executor of this will.

"This Feb. 9, 1946

F. P. Maxwell."

"I F. P. Maxwell of Buckhannon Upshur Co West Va being of sound disposing mind *herby by* make publish and declare this to be my last will & testament, hereby revoke all wills by me at any time heretofore *maid*.

"After all *depts* are paid I want to give all money as herein stated. First $200. to Johnnie Wilt, $11000 to Nora Wilt for her kindness to & Rita & I. The rest to be divided *equaly* between the various Relation & so Lee Maxwells children Porter Jr. & Columbia Black Clay Maxwell two children Clay Jr & Townay. Ally Bothus So dr Isaac Maxwell to have one share Porter Jarvis son Hugh to have $2000. My Executor to sell properties as he see fit. I do think Mingo land should be sold last. & I want Bob and Jr Young to do their best to work the best out of the property.

"S. R. HARRISON Exec &
"JR YOUNG Attorney
"This 11 Feb 1946"

The above quoted three writings, as they appear on a single sheet of paper, consisting of three sections pasted together, and which were found in a sealed envelope, are filed as an exhibit with the original bill of complaint by the allegations of which it is asserted that the three written instruments together constitute the last will and testament of Frank P. Maxwell. The rule is well established, however, that when exhibits are filed in support of a pleading they are considered as a part of it and if the two are in conflict the exhibit will control and be looked to by the Court. *Caswell* v. *Caswell,* 84 W. Va. 575, 100 S. E. 482; *Freeman* v. *Carnegie Natural Gas Co.,* 74 W. Va. 83, 81 S. E. 572; *Atlantic Terra Cotta Co.* v. *Moore Construction Co.,* 73 W. Va. 449, 80 S. E. 924; *Board of Education* v. *Berry,* 62 W. Va. 433, 59 S. E. 169, 125 Am. St. Rep. 975; *Richardson* v. *Ebert,* 61 W. Va. 523, 56 S. E. 887. Accordingly the character and the effect of each writing and particularly of that dated February 11, 1946, will be determined by the Court from the contents of the exhibit, regardless of the allegations concerning it. *City of Wheeling* v. *Benwood-McMechen Water Co.,* 115 W. Va. 353, 176 S. E. 234; *Lockhead* v. *Berkeley Springs Waterworks and Improvement Co.,* 40 W. Va. 533, 21 S. E. 1031.

There was no common-law right to make a will of real estate. The right to dispose of property by will is generally regarded as a statutory right, and, within constitutional

limitations, it is subject to the complete control of the Legislature. 1 Page on Wills, 2d ed., Section 22; 68 C. J. 414.

The statutory requirements in this State for making a valid will are set forth in Section 3, Article 1, Chapter 41, Code, 1931. This section, which was in effect when each of the three instruments was written by Frank P. Maxwell, contains this language:

"No will shall be valid unless it be in writing and signed by the testator, or by some other person in his presence and by his direction, in such manner as to make it manifest that the name is intended as a signature; and moreover, unless it be wholly in the handwriting of the testator, the signature shall be made or the will acknowledged by him in the presence of at least two competent witnesses, present at the same time; and such witnesses shall subscribe the will in the presence of the testator, and of each other, but no form of attestation shall be necessary."

It will be observed that this statute provides that no will shall be valid unless it be in writing and *signed by the testator,* or by some other person in his presence and by his direction, *in such manner as to make it manifest that the name is intended as a signature.* The vital inquiry here is whether the act of the writer of the instrument in inserting his name in the first line in the part generally designated as the caption or the exordium, and in not affixing his name at the end or the bottom or on the margin of the paper, satisfied the requirement of the statute that to be a will the written instrument must be signed by the testator in such manner as to make it manifest that the name is intended as a signature. The statute does not say that the instrument must be signed by the testator at any particular place or in any specified part of it. The only express requirement with respect to the act of signing is that it be done in such manner as to make it manifest that the name is intended as a signature. *LaRue* v. *Lee,* 63 W. Va. 388, 60 S. E. 388, 129 Aι. S. R. 978, 14 L. R. A. (N. S.) 968. Ordinarily the signature to a testamentary writing may be expected to appear at the end or the bottom of the in-

strument, as it does at the end of each of the instruments written by F. P. Maxwell, dated September 8, 1944, and February 9, 1946, which occur above the writing dated February 11, 1946, on the single piece of paper to which it was attached by being pasted below and on the bottom of the sheet; but the appearance of the signature at the end or at the bottom of the instrument is not essential to its validity as a will, if the name, wherever it may be in or on the writing, was signed in such manner as to make it manifest that it is intended as a signature. Section 3, Article 1, Chapter 41, Code, 1931. See also *Dinning* v. *Dinning*, 102 Va. 467, 46 S. E. 473, in which a paper wholly in the handwriting of its writer which ended with the statement: "I, William Dinning, say this is my last will and testament" was held to be sufficiently signed; *Murguiondo* v. *Nowlan's Executor,* 115 Va. 160, 78 S. E. 600, in which an instrument entirely in the handwriting of the maker and to which his name was affixed on the margin of the last page in the presence of witnesses, was held to be a sufficient signature; and *Forrest* v. *Turner,* 146 Va. 734, 133 S. E. 69, in which a written instrument consisting of a single sheet of paper wholly in the handwriting of the writer, the writing on which filled the entire page and left no space for his name which, however, was written on the reverse side of the page, was also held to be sufficiently signed.

The precise question here presented has not been considered or determined in any prior decision of this Court. It has, however, been passed upon by the Supreme Court of Appeals of our neighboring State of Virginia where a statute prescribing the manner in which a will must be signed, in language identical with that of the West Virginia statute already quoted, has been in force since 1849. Section 4, Chapter 122, Title 33, Code of Virginia, 1849. In the early case of *Waller* v. *Waller,* 1 Gratt. 454, decided in 1845 and before the enactment of the statute, it was held that a paper, wholly in the handwriting of a person who undertook to will his property by that method and who wrote his name at the commencement of the paper

but who did not fill the blank for the date at the end and whose name was not subscribed to the paper which was without any attesting witnesses, was not sufficiently executed as his will. In that case it was also held that the finality of the testamentary intent must be determined from the instrument itself and that such intent can not be proved or disproved by extrinsic evidence. The requirement that the instrument must be signed in such manner as to make it manifest that the name of the testator is intended as his signature, stated in *Waller v. Waller,* 1 Gratt. 454, and subsequently incorporated in the Virginia Code of 1849, has been uniformly recognized and enforced in the decisions of the Virginia Court; and that requirement appears to have been placed in the statute as an expression of approval by the Legislature of the holding on that point in that case. See *Parramore* v. *Taylor,* 11 Gratt. 220.

The insertion of the name of the person who undertakes to prepare a holographic will, made by him at the commencement of the paper, is an equivocal act, and unless it appears affirmatively from the instrument itself that the name is intended as his signature, the requirement of the statute as to the signing of a will is not satisfied. *Ramsey* v. *Ramsey,* 13 Gratt. 664, 70 Am. Dec. 438; *Roy* v. *Roy,* 16 Gratt. 418; *McBride* v. *McBride,* 26 Gratt. 476. An instrument wholly in the handwriting of its writer beginning with the words: "I, Abraham Warwick, Jr., of the County of Henrico, declare this to be my last will and testament" but which did not elsewhere contain his name, and which was inclosed in a sealed envelope which bore the notation: "My Will—Abraham Warwick, Jr.", also in his handwriting, was not signed by the testator within the meaning of the statute, and did not constitute a valid will. *Warwick* v. *Warwick,* 86 Va. 596, 10 S. E. 843. In *Meany* v. *Priddy,* 126 Va. 84, 102 S. E. 470, a document wholly written by Virginia Deane Meany was entitled "Virginia Deane Meany's Will." Her name, however, did not appear at any place in the writing except in the second of its six consecutively numbered items. The paper writing was found after her death in a sealed envelope upon which

she had written: "Mrs. Virginia Deane Meany's Last Will, Jan. 9th-18." In holding the writing not to be a valid will, and after stating that the question presented was not an open question in Virginia, the Court said: "No mere intention or effort to dispose of property by will, however clearly and definitely expressed in writing is sufficient. Such purpose must be executed in the only manner authorized by the statute; that is, the writing itself must be authenticated by the signature of the decedent. It is not sufficient to raise a doubt as to whether his name is intended to authenticate the paper which is propounded as a will, for, to use the explicit language of the statute, it must be signed 'in such manner as to make it manifest that the name is intended as his signature', and unless so signed it is not valid."

In the recent case of *Hamlet* v. *Hamlet,* 183 Va. 453, 32 S. E. 2d 729, decided in 1945, the question whether a two page holographic writing was a valid will was involved. The paper contained the name of the writer only in the second paragraph which was couched in this language: "I, Dr. Robert, Edward Hamlet, now of Pamplin, Va. being of sound and disposing mind do hereby make, Publish & declare this to be my last Will & Testament, hereby Revoking any other Will, by me at any time made", The final paragraph was in this form: "This Will is in my own handwriting, done by me of Good & Sound mind on this 13th day of November, 1941. I appoint John Hamlet Jr. as Administrator without Bond", and on the back of the second page was the notation: "My last Will". The Court held that the instrument was not a valid holographic will. In the opinion in that case the Court stated that though the intention to make a will was clear the necessary intention to sign the instrument was lacking and, referring to the statute, used this language: "This statute has been before this court in numerous cases. Minor on Real Property, 2d Ed., Section 1160, pp 1548, 1549, correctly states the rule deducible from our decisions: 'Under the statute it is essential that a holograph will, like any other, be signed by the testator "in such manner as to make it manifest that the name is intended as a signature;" and there-

fore in the absence of any affirmative evidence on the face of the paper that it is intended as a signature, the testator's name appearing at the commencement or in the body of the will is not a sufficient signature' ".

In *McElroy* v. *Rolston*, 184 Va. 77, 34 S. E. 2d 241, also decided in 1945, an instrument entirely in the handwriting of an elderly woman consisting of a single sheet of lined legal cap paper and containing her name which appeared only in the first line immediately after the date, was held not to be her last will and testament. The contents of the writing, following her name, included her address, the declaration that the statement was written by her hand and was what she wanted done with her estate after her death, and language which undertook to dispose of her property. After her death the document was found in a locked secret drawer in her home. In the following portions of the opinion the Court said:

"It is essential to a valid will that there be testamentary intent and that the testamentary paper be executed in accordance with the provisions of the statute. Both must concur. As succinctly stated in *Warwick* v. *Warwick, supra* [86 Va. 596, 10 S. E. 845]: 'The signing required by the statute must manifestly appear to be intended as a signature from the face of the instrument, which must appear, by internal evidence, equally convincing as the signing at the foot or end; that it must be manifest. The finality of the testamentary intent must be ascertained from the face of the paper, and extrinsic evidence is not admissible to prove or disprove it."

"There was a holographic writing before us in each of the cases of *Ramsey* v. *Ramsey's Ex'r supra, Roy* v. *Roy's Ex'r supra, Warwick* v. *Warwick, supra,* and *Hamlet* v. *Hamlet, supra,* in which the author of the respective instruments had inserted his name in the opening clause or the beginning of the writing. We held in each case that such insertion of the name was 'an equivocal act', and in the absence of any affirmative evidence on the face of the paper, it was not manifest that the name was intended as a signature to the paper."

The requirement of the statute, Section 3, Article 1, Chapter 41, of the Code of West Virginia, 1931, the provisions of which, as already pointed out, are identical with those of the Virginia statute with respect to the signing of a will by the testator, applies to the instrument dated February 11, 1946, written by Frank P. Maxwell. Under the rule recognized and enforced in the foregoing decisions of the Supreme Court of Appeals of Virginia, the writing of his name in the first line of that paper is an equivocal act and does not make it manifest that the use of his name in that part of the instrument was intended as his signature. The pasting of the writing to, and at the bottom of, the piece of paper which contained the signed writings dated September 8, 1944, and February 9, 1946, does not remove the uncertainty which results from his failure to sign his name to the writing dated February 11, 1946, in such manner as to make it manifest that his name was intended as his signature. His prior acts in signing his name at the end of each of the writings dated September 8, 1944, and February 9, 1946, indicate clearly that he knew the purpose and the effect of a signature and that he wrote his name at the end of each of those instruments to give them the requisite finality and to make them complete as testamentary writings. In all of them he wrote his name in the beginning sentence and at the end of the first two of them he signed his name. His failure to sign his name at the end of the instrument dated February 11, 1946, the last of the three in the order of its position on the page which contains all of them as well as in the order of its date, creates an equivocal situation. Of itself it indicates uncertainty and lack of finality in his intention to sign the instrument and complete it as a testamentary document.

The reason for his failure to sign his name at the end of the writing dated February 11, 1946, can not be ascertained or determined. It can rest only on mere speculation; but that there was some reason for his failure to complete the writing by affixing his signature to it is clear beyond question. He may have wished to change or revise and clarify some of the statements in the writing which may

be difficult to interpret or understand, or to postpone its completion in its present form by later signing his name at the end. He may have failed to sign it through inadvertence. Whatever it was, something caused him to hesitate and to stop before its final completion. Whatever his reason, he failed to affix his signature at the end of the writing. The evidence of his intent to use as his signature his name in the first line of the written instrument dated February 11, 1946, must appear from the instrument itself, and even if all three writings are examined and considered as a complete unit and as one document because of their appearance on a single sheet of paper, nothing appears which makes it manifest, as required by the statute, that Frank P. Maxwell, in writing his name at the beginning of the instrument dated February 11, 1946, intended it as his signature. There is nothing to indicate, from the face of that instrument, that he wrote his name in the opening sentence for the purpose of finally adopting, ratifying or authenticating the contents of the paper which follow his name. Though the position of his name identifies the writer it does not show finality of testamentary intent and it utterly fails to satisfy the requirement of the statute that it be signed by the testator in such manner as to make it manifest that the name is intended as a signature. For this reason the writing dated February 11, 1946, can not be held or considered to be of testamentary character or effect, or as constituting, in whole or in part, the last will and testament of Frank P. Maxwell.

The envelope which, according to the allegations of the original bill of complaint and the amendments requested and proposed by the plaintiffs, contained the three papers, bore the notation "F P. Maxwell's Last Will Feb. 11, 1946" in his handwriting, and has been lost or misplaced, being extrinsic to the written instrument dated February 11, 1946, could not be used to show that the writing by Maxwell of his name in the first line of that paper was intended as his signature. *Dinning* v. *Dinning,* 102 Va. 457, 46 S. E. 472; *Warwick* v. *Warwick,* 86 Va. 602, 10 S. E. 843, 6 L. R. A. 775; *Roy* v. *Roy,* 16 Gratt. 418, 84 Am. Dec. 696;

*Ramsey* v. *Ramsey,* 13 Gratt. 664, 70 Am. Dec. 438. For that reason the trial court did not commit error in denying the motion of the plaintiffs to permit them to amend the original bill in that respect and to grant them a reasonable time in which to make such amendment, or in refusing to permit the amendments proposed and offered by them at the bar of the court as shown by the final decree of February 1, 1947.

The plaintiffs advance the contention that the written instrument dated February 11, 1946, may properly be given testamentary character and effect as a modification of the written instruments dated September 8, 1944, and February 9, 1946, which are duly signed by F. P. Maxwell. In support of this position they cite the case of *LaRue* v. *Lee,* 63 W. Va. 388, 60 S. E. 388, 129 A. S. R. 978, 14 L. R. A. N. S. 968, in which this Court said that new portions written into a holographic will by the hand of the testator, if his name remains in such manner as to make it manifest that it is intended as a signature, may make the whole document as changed a complete and valid holographic will. The contention of the plaintiffs in this respect can not be upheld for the simple reason that the method pursued by the writer of the will involved in the *La Rue* case was not followed by F. P. Maxwell in connection with any of the three papers written by him. He did not strike out or erase any of the contents of the will dated September 8, 1944, or of the codicil dated February 9, 1946, or add to or interline any written matter in either of them so as to place any such changes or alterations above the signature which appeared upon the two signed documents. Because of the entirely different factual situation the rule announced in the *LaRue* case has no application here.

The conclusion that the written instrument dated February 11, 1946, can not be given effect, in whole or in part, as the last will and testament of Frank P. Maxwell, has been reached with some reluctance but with no doubt as to its correctness or its necessity under the statute which prescribes the requisites of a valid will. The reluctance is due to the belief that the writer of that instrument in-

tended to dispose of his property in the manner set forth with reasonable clarity in some of its provisions, although other statements in it appear to be ambiguous and difficult to understand. The appeal in this case was granted for the purpose of undertaking to prevent the defeat of the testamentary intent of the decedent and to give effect to his wishes in that respect if to do so would satisfy the mandate of the statute and comply with the applicable legal requirements which this Court must recognize, uphold and enforce. Though it will not do to defeat the testamentary disposition of property which a person clearly indicates that he intended to make, unless required by law to do so, it is equally essential and important that the plain provisions of a binding statute be not relaxed or ignored and that there should be no recognition of an unsound rule which, though perhaps accomplishing a desirable result in a particular case, would produce uncertainty and confusion with respect to the requisites of a valid will and unsettle the generally recognized, long observed and firmly established principles which govern the disposition of property by that convenient and salutary method. In failing to sign the writing dated February 11, 1946, Frank P. Maxwell simply neglected to make effective his expressed testamentary intent in the manner required by law. For that reason it can not be recognized or carried into effect. He, not the law, is responsible for the fault if any there be. If he had just as clearly expressed his intended disposition of his estate by dictating the same language to another person who had reduced it to writing and as so written the instrument was not signed and witnessed as provided by statute, it is obvious that such unexecuted writing would not constitute a valid will. There is no apparent distinction between the unsigned paper in the handwriting of Frank P. Maxwell and an unexecuted instrument containing identical language prepared by another person for him. Neither can be recognized as a valid will.

As the final decree of the Circuit Court of Upshur County is clearly right it must be and it is affirmed.

*Affirmed.*