# CHARLESTON

LaRue *et al.* v. Lee *et al.*, Executors, &c.

Submitted June 15, 1907.    Decided January 28, 1908.

1. Wills—*Holographic Will—Erasures—Alterations—Revocation.*
    Erasures by hand of testator, in a holographic will, is legal revocation of such portions as are so erased, since it is in the manner required for a will of that character to be executed; and, for the same reason, new portions written into such will by hand of testator, his name remaining in such manner as to make it manifest that it is intended as a signature, may make the whole as changed a complete and valid new holographic will of such testator.    (p. 391.)

2. Same—*Presumptions.*
    The use of pencil in writing a will, otherwise duly executed, or in making alterations in such will, raises no presumption that testator was only deliberating and that the will is not final. The use of such instrument may be as final and conclusive as to intent of testator as the use of any other.    (p. 392.)

3. Same—*Contemplated Changes.*
    Evidence to show that testator, in a will duly executed, contemplated changes therein, cannot effect its validity, in its integrity, or in any of its parts. Until there is a change in the legal mode, the presumption is that the result of such contemplation was a determination to adhere to the will as executed.    (p. 392.)

4. Same—*Declarations of Testator.*
    Conduct and declarations of the testator, after a will is duly executed, manifesting ignorance of its existence, are not competent to question the validity or existence of such will.    (p. 393.)

5. Trial—*Directing Verdict.*

It is the duty of a trial court, if requested, to direct a verdict for the party who has adduced evidence sufficient to warrant a verdict in his favor, and no evidence appreciably tending to overthrow the case so made has been adduced by the opposite party. (p. 394.)

Error to Circuit Court, Hancock County.

Action by Ann W. LaRue and others against William M. Lee and others. Judgment for defendants, and plaintiffs bring error.

*Affirmed.*

Oliver S. Marshall, for plaintiffs in error.

John R. Donehoo, for defendants in error.

Robinson, Judge:

A writing propounded as the last will and testament of William Griffith, deceased, was admitted to probate, and, upon appeal therefrom to the circuit court, an issue of *devisavit vel non* was submitted to the jury. The evidence offered by the contestants was excluded, and a verdict directed for proponents, which being returned, judgment accordingly followed, and, upon proper exceptions, this writ of error prosecuted.

This writing is in testamentary form, and was duly proved to be wholly in the handwriting of the testator and signed by him. While it is crude in expression, and not a standard of orthographical and grammatical construction, it is quite intelligible. The writing is plain and easily read. It appears to have been originally written with a purple indelible pencil, and to contain some erasures and interlineations by a black graphite pencil. Upon its face, and by all its terms, it is a will. It is in the formal language of a will, and can be read completely, with the changes made therein. We have been favored with the original document, and find it to be of no unusual type, but such as appears daily in the affairs of old-fashioned, sensible, but illiterate men. It is written on two sheets of note, or small sized letter paper. It contains four pages, each plainly numbered. The document is regularly dated and signed. On a seperate and unnumberd sheet, of the same size and quality of paper, in black graphite pencil writing, evidently by the same hand as that of the other sheets, there is a separate writing, signed by the

testator but not dated, which states: "I may *chang* my will;" and then proceeds to set forth what changes might be made, ending with these words: "If I don't make *theas* changes my will must stand as I *hav* it now *Roat.*" After testator's death, all this writing was found, by one of the executor's named therein, in a drawer of a bureau in testator's house; and this executor took possession thereof, and produced it for probate as aforesaid.

It is well to note that this proceeding can relate only to probate, and in no wise to the construction of the writing. Viewing the whole record, we observe that the case turns entirely upon the sufficiency of the evidence introduced by contestants to invalidate this writing as a will. This is true, because (1) the paper itself, upon its face, is clearly a legal testamentary disposition of property; (2) the evidence of proponents is sufficient to establish such writing as a holographic will of the decedent, under our statute. Since these propositions are convincingly true, the question presented is: Was the evidence on behalf of contestants of sufficient weight to overthrow the case so made? If it was not of such weight, there was no error in excluding it from the jury and directing a verdict for proponents. In *Kuykendall* v. *Fisher*, 61 W. Va. 87, this Court held: "When the evidence adduced by one of the parties to a civil action is sufficient to warrant a finding in his favor, and no evidence appreciably tending to overthrow the case so made has been adduced by the opposite party, it is the duty of the court to direct a verdict in favor of the former, if requested so to do." We find this principle to be the most applicable and controling in the case before us.

It is argued that the erasures and interlineations invalidate the writing as a will, or, in other words, work a revocation of the same. Further contentions of the contestants are that the writing is only deliberative; that the same appears from the writing itself and the parol evidence introduced; and, therefore, that lack of testamentary intent is shown. These contentions appeared to be based upon the following: That the writing is in pencil, with changes made by a different pencil; that said writing on the unnumbered sheet evidenced a probability that testator might change his will; that the writing was not found in a box containing testator's other

valuable papers and money; that testator, a month or so be-
fore his death, stated that he had blocked out a will; and that
on his death bed he said that he did not have his business
attended, but perhaps the court could do it as well.

Alterations in this writing have not the effect insisted upon
by contestants. No presumption arises from them to be
overcome by proponents. The will is presumed to have been
in the same condition when executed as it was when found
after testator's death. Rood on Wills, section 248. In this
State one may make a valid will without the same being at-
tested by witnesses. He may make a holographic will, as
this man did. The only requisites of such will are that it
shall "be wholly written by the testator," and signed by
him "in such manner as to make it manifest that the name
is intended as a signature." No dating is required. It need
not be attested by witnesses, says the statute. The writing
before us is unquestionably established as such, looking only
to its face and the evidence of proponents. Do the erasures
and changes effect it, as they would a will not holographic
unless the same was properly re-attested after the changes
were made? Our statute settles this, wherein it provides
that a writing declaring an intention to revoke, and executed
in the manner in which a will is required to be executed, is
the legal method of revocation. So we say that erasures in a
holographic will, made by the hand of testator himself, is
legal revocation of such portions as are so erased, since it
is in the manner required for a will of that kind to be exe-
cuted; and new portions written into such will, by the same
hand, to take the place of erasures, or new portions other-
wise written therein, by the same hand, being thereby exe-
cuted in the manner which justifies the validity of a holo-
graphic will originally, so long as the signature of the
testator remains in such manner as to make it manifest that
it is intended as a signature, do not in any sense invalidate
the will or effect its finality, since it is then a complete new
holographic will, and needs no re-execution or republication
before witnesses, because it did not originally demand exe-
cution and publication before then. To say that the whole
must be re-written and again signed by testator, is simply to
say that which is neither reasonable nor practicable. There
was alteration in the mode provided by law, since it is

proved that such alteration was made in the handwriting of testator. *Sharp* v. *Sharp*, 2 Leigh 256. We think that these considerations sufficiently dispose of the proposition that the erasures and interlineations on their face affect this writing as a will, or its finality as such.

The proposition that writing in pencil is presumptive of deliberation, and no intent of finality, is so foreclosed by authority that but brief reference to it is merited here. "Statutes requiring wills to be made in writing are fully satisfied by printing from plates or type, by typewriting, or by writing made with a lead pencil." Rood on Wills, section 246. And in *Estate of Tomlinson*, 133 Pa. St. 245, (19 Am. St. Rep. 637), it is held: "A will wholly written in lead pencil is as valid as if written in ink; and the cancellation of legacies in lead pencil, though in a will written in ink, may be as final and conclusive as to the intent of testator as if made in ink." Such is the American authority. Underhill on Wills, section 183.

No suspended intention appears in this writing; it is complete, and there is no breaking off in its dispositions. The writing on the unnumbered sheet, saying that he may change his will, shows no suspended intenion of testator, for it is therein distinctly stated that if changes are not made the will shall stand as written. It appears that some of the changes therein contemplated were made, legally, as we have held above. But testator, by his language in the memorandum on the unnumbered sheet, made it clear that his will was to stand as written, except as to such changes as he might make therein; and that, changes being made, it was to stand as changed. In *Barnewell* v. *Murrell*, 108 Ala. 366, there is an applicable holding that meets with our approval, since good reason and stability of proper papers as testamentary dispositions justify it: "A will having been duly executed, evidence to show that the testator entertained thoughts of, or contemplated changes, alterations, or revocations thereof, cannot effect the validity of such will, in its integrity, or in any of its parts. Until there is a change, alteration or revocation, in the mode appointed by law, the legal presumption is, that the result of all thought and contemplation, was a determination to adhere to the will as executed."

The finding of the will in the drawer instead of in the testa-

tor's tin box is a mere circumstance, so slight as to have no appreciable weight. Our statute law provides no particular custody to be necessary in the case of a holographic will, as do the statutes of some other states; nor in fact, as to any will.

Where is the absence of testamentary intent shown, as urged for contestants? Not from the writing itself, for such intent there appears. And, says Rood on Wills, section 62: "Usually no proof of testamentary intent is required, for it sufficiently appears on the face of the paper. But if there be any doubt on the matter, the circumstances under which the will was executed may be shown in detail." But where is the doubt shown? Shall we say that it is shown by the slight parol evidence that the testator said he had blocked out a will, and, later, that his business was unattended, as hereinbefore recited? Can this prevail against the plain testamentary form and intent shown by the writing in question? The law does not overthrow a testamentary writing on the weight of mere parol declarations by testator. If it did, why require testamentary dispositions to be in writing? Why not establish them by parol? Said Judge Baldwin, in *Malone's Admr.* v. *Hobbs*, 1 Rob. 346: "The spirit of our statute law in-regard to the making and revocation of wills, is, to restrain parol testimony on the subject within the narrowest practicable limits. Hence the solemnities of writing, signature, attestation." The same spirit has been constantly maintained, and is apparent in our present statute on wills.

The inadmissibility of such oral declarations of a testator as are relied upon to invalidate the will we find to. be fully suttained by authorities cited and principles discussed in *Couch* v. *Eastham*, 27 W. Va. 796. To admit such declarations inconsistent with the will would be to establish a doctrine which would render useless the precautions which the law requires in making a will; for, if such evidence were allowed, witnesses would constantly be produced to set aside the most solemn testamentary instruments. Testator having shown a settled purpose that such writing as is before us should be his will, there must be shown something more than declarations inconsistent with its existence, since the paper, in his own handwriting, and under his control, was permitted

to remain undisturbed by him until his death. The law prescribes the requisites for a valid will, and when these are complied with in strict conformity thereto, can it be allowed, upon reason, to defeat them by mere declarations, unaccompanied by any act? The true principle in regard to declarations by testator, affecting his will, is this: "The conduct and declarations of the testator, both before and after he executed the will, are competent evidence to show his capacity, at time the will was executed, when the issue is upon the sanity of the testator; but after the will is made, such conduct and declarations manifesting ignorance of the existence of the will are not competent to show that the testator never had made the will in question." Redfield on Wills, 557; *Boylan* v. *Meeker*, 28 N. J. L. 274; *Leslie* v. *McMurtry*, 60 Ark. 301; *Wells* v. *Wells*, 144 Mo. 198.

It follows from what we have said, that refusal of the instructions requested by contestants and exclusion of their evidence were proper. The proposed instructions were unwarranted by a correct legal view of the case, as expressed by us herein. The evidence adduced by proponents was sufficient to warrant a finding in their favor, and no evidence appreciably tending to overthrow the case made by them having been adduced by contestants, it was the duty of the court, as requested by proponents, to direct a verdict in their favor. Their is no error, and the judgment is affirmed.

*Affirmed.*