Janette Krause HANCOCK, et al., Appellants,

v.

Florence A. KRAUSE, Administratrix of the Estate of Lorenz W. Krause, Deceased, et al., Appellees.

No. 01–87–01112–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 25, 1988.

Larry P. Urquhart, Steven Haley, Moorman, Tate, Moorman & Urquhart, Brenham, for appellees.

Paul A. Ehlert, Spinn, Ehlert, Spinn, Weisler & Weisler, Brenham, for appellants.

Before EVANS, C.J., and SAM BASS and DUNN, JJ.

## OPINION

DUNN, Justice.

This is an appeal from a summary judgment entered in a will construction case.

The testator left a holographic will disposing of his estate as follows:

I. I wont [sic] my beloved 2nd wife Florence A. Krause to have a Live [sic] Estate: I mean for her to have all the income of my Estate as long as she lives. Intrests [sic], rents, Dividends, Oil bonus-leases etc and she shall have the right to collect-pay bills, rent, lease as if it was her own. *But* not the right to sell, give away or in anyway dispose of my property as long as she lives. My will is for her to enjoy all of the income of my Estate as long as she lives and then and then only my my [sic] heirs recieve [sic] heir bequested inheritance.

II. My Sister Ida and heirs to have my 102.77 A. in Schleicher County.

III. My Cousin Helen (Krause) Leonhardt and heirs to have my 97.5A in the J. Winn League.

IV. My 237.82 A. in the A. Baker League to ~~my niece Eurline (Schmidt) Baranowski~~ my 2 Step Children Dr. Allen C. Eichler & Yvonne Eichler Blieden share and share alike.

V. My MMCD (6) Series E. Bonds, Bank, Carmine Lbr. S.C.S. Ass'n Shares and all loose monies to Dr. Allen Eichler and Yvonne Eicher Blieden and heirs: share and share alike.

VI. I wont [sic] all of my last debts paid out of all my Est, Land, Series "E" bonds, Shares, etc. I wont [sic] to be burried [sic] as to instruction Billy Sohns has in Prairie Lea cemetary [sic]. If anybody refuses their bequested share then that shall go to the I.R.S.

The will was contested by the appellants, the three children of the testator by his first wife. After a jury found that the testator had testamentary capacity at the time the will was signed, the court admitted the will to probate. The testator's widow later qualified as administratrix with will annexed.

Thereafter, the appellants sought construction of disputed portions of the will under the Texas Uniform Declaratory Judgment Act, Tex.Civ.Prac. & Rem.Code Ann. sec. 37 (Vernon 1986), and the appellees then filed for summary judgment. The court granted the appellee's motion for summary judgment holding that: (1) the interlineation appearing in article IV is a valid alteration, and therefore, the 237.82–acre tract vests in Dr. Allen C. Eichler and Yvonne Eichler Blieden subject to the life estate granted by article I to Florence A. Krause; (2) the term "heirs" in article I does not confer any rights upon the testator's heirs under the law of intestate succession to share in or receive any portion of the estate described in article I after the termination of the life estate to Florence A. Krause, or to those portions of the estate that are described in articles II, III, IV, and V, which vests in those persons expressly named subject to the life estate of Florence A. Krause; (3) that the phrase "and heirs" in articles II, III, and V does not confer any rights upon the testator's heirs in law of intestate succession to share in or receive any portion of the estate described in article I after the termination of the life estate of Florence A. Krause, or to those portions of the estate described in articles II, III, and V; (4) that the phrase "loose monies" in article V includes all legal tender in any form, other than the certificates of deposit and series E bonds separately described in article V, and includes one-half of savings account no. 758–268 and checking account no. 315–366 at Washington County State Bank, one–half of cash in the safety deposit box, all of savings account 00–4912354 at Remington Savings Association, and the coin collection; (5) and that the term "MMCD (6)," appearing in article V describes the certificates of deposit at Remington Savings Association.

In points of error one and two, the appellants contend that, as the testator's children, they are the "heirs" referred to by the testator in his holographic will and that the trial court erred in determining that they did not have a right to share in and receive those portions of the estate devised to "heirs" in articles I, II, III, and V, upon termination of the life estate granted to Florence A. Krause.

█ A summary judgment is proper only when a movant establishes that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972); Tex.R.Civ.P. 166–A. Construction of a testamentary instrument is a question of law for the court where there is no ambiguity in the instrument and extrinsic evidence of circumstances existing at the time the will was written are undisputed. *Brown v. Payne*, 142 Tex. 102, 176 S.W.2d 306 (1943).

█ The basic principle in construing a will is to ascertain the intent of the testator. *Sellers v. Powers*, 426 S.W.2d 533, 536 (Tex.1968). If the language of the will is unambiguous and plainly expresses that intention, it is unnecessary for the court to apply the technical rules of construction; rather, the court is confined to a mere legal interpretation and enforcement of the testator's intention. *Silverthorn v. Jennings*, 620 S.W.2d 894, 896 (Tex.Civ.App.—Amarillo 1981, writ ref'd n.r.e.).

█ In determining the testator's intent, the whole instrument should be considered and, if possible, every provision of

the will should be harmonized with all other provisions and given its proper effect. *Republic Nat'l Bank of Dallas v. Fredericks*, 155 Tex. 79, 283 S.W.2d 39 (Tex.1955). Where the general intent of the testator is clear from the whole instrument, any particular terms that are inconsistent with that intent must be rejected or restricted in their application. *Wattenburger v. Morris*, 436 S.W.2d 234 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n.r.e.).

The term "heirs" in a strict and technical sense refers to those persons designated by law to succeed to the estate of a decedent who dies intestate. Tex.Prob.Code Ann. sec. 3(*o*) (Vernon 1980). The appellants acknowledge that the term "heirs" would technically include a surviving spouse, as well as children, but argue that by granting the widow a life estate, the testator indicated his intent to vest in them a remainder interest in the entire estate. We conclude that such a construction would frustrate the intent of the testator and render the provisions of the will inconsistent as a whole.

■ In section I of the will, the testator provided that upon termination of the life estate in his widow, Florence A. Krause, that "then and then only my my [sic] heirs recieve [sic] *heir bequested inheritance.*" (Emphasis added.) In sections II, III, IV, and V, the testator proceeded to make specific bequests of the property that was subject to the life estate in section I. If the term "heirs," employed in section I, is interpreted to mean "children," as urged by the appellants, then the appellants would succeed to the remainder of the life estate upon its termination, in derogation of those taking specific bequests under sections II, III, IV, and V. Also, if the phrase "and heirs" in section II, III, and V is construed to mean "children," it would logically follow that appellants would be entitled to share in the specific bequests under these sections. This result would be inconsistent with their succession to the entire estate in section I.

We think it is also significant that the testator did not, in article I, specifically devise or bequest the remainder estate to

his "heirs." Rather, the testator merely acknowledged that his "heirs" would be entitled, on the death of his wife, to receive their respective shares elsewhere "bequested" in his will.

■ To harmonize all parts of the will and to give effect to the intent of the testator, the term "heirs" should be interpreted in section I as referring only to the legatees named in the following sections. *See Schott v. Oppenheimer*, 344 S.W.2d 250 (Tex.Civ.App.—San Antonio 1961, writ ref'd n.r.e.). Further, although a term used in a will should be construed as having the same meaning throughout the will, *Weathers v. Roberson*, 331 S.W.2d 87 (Tex. Civ.App.—Beaumont 1959, writ ref'd n.r. e.), the will as a whole indicates that the testator's intent in sections II, III, and V, is that the heirs of the specific legatees take the property upon that legatee's death. The phrase "and heirs" in these sections directly follows the name of the specific legatee and does not directly refer to the testator as in section I ("my my heirs"). There is no evidence in the record that any of the specific legatees are deceased, and therefore the meaning of the phrase "and heirs" in these sections is irrelevant to the disposition of the testator's estate.

Points of error one and two are overruled.

In point of error three, the appellants argue that the trial court erred in holding that the alteration in article IV was valid notwithstanding that said alteration was made at a later date and was not signed by the testator. At trial, the appellants stipulated that the will was wholly in the handwriting of the testator.

■ A will that is *not* wholly in the handwriting of the testator must be executed according to certain formalities, and any alterations or interlineations made on such an instrument must be made prior to execution to be valid. *Schoenhals v. Schoenhals*, 366 S.W.2d 594, 599 (Tex.Civ.App. —Amarillo 1963, writ ref'd n.r.e.). The only formalities required for a valid holographic will, however, are that it be signed by the testator and be wholly in his handwriting. Tex.Prob.Code Ann. sec. 59 (Ver-

non 1980). Unlike an attested will, alterations and interlineations in a holographic will do not invalidate the instrument. *Stanley v. Henderson,* 139 Tex. 160, 162 S.W.2d 95 (1942) (changes made by the testator in his holographic will did not invalidate it, and were controlling over conflicting provisions of the original will because they "were made later"); *see also City of Austin v. Austin Nat'l Bank,* 488 S.W.2d 586, 592–93 (Tex.Civ.App.—Austin 1972), *aff'd in part and rev'd in part on other grounds,* 503 S.W.2d 759 (Tex.1974) (where court recognized *Stanley v. Henderson* rule, but refused to recognize revocation of will on procedural grounds). Texas also does not require that holographic wills be dated. *Gunn v. Phillips,* 410 S.W.2d 202, 207 (Tex.Civ.App.—Houston 1966, writ ref'd n.r.e.). In jurisdictions that similarly recognize holographic wills, it is generally held that when a holographic will is altered by the testator, this act constitutes both a revocation of the altered provisions and a valid disposition by the new provisions, with the prior signature being adopted. *See e.g. In re Finkler's Estate,* 3 Cal.2d 584, 46 P.2d 149 (1935); *Succession of Guiraud,* 164 La. 620, 114 So. 489 (1927); *LaRue v. Lee,* 63 W.Va. 388, 60 S.E. 388 (1908).

Point of error three is overruled.

In point of error four, the appellants contend that the trial court erred in determining that the term "loose monies" includes all legal tender, other than certificates of deposit and Series E bonds, which were separately described in section V of the will.

The term "cash" has been used to denote not only cash, coins, and paper money, but also bank notes, sight drafts, and demand deposits at banks and savings associations. *In re Estate of Haldiman,* 653 S.W.2d 337, 340 (Tex.App.—San Antonio 1983, no writ); *see also Thompson v. Thompson,* 149 Tex. 632, 236 S.W.2d 779 (1951). The term "money" has sometimes been given a much broader meaning in testamentary instruments to include all the testator's wealth and property. *Stewart v. Selder,* 473 S.W.2d 3, 9 (Tex.1971); *In re Estate of Haldiman,* 653 S.W.2d at 341.

Here, the court limited the meaning of "loose monies" to "legal tender" and included in such definition, the testator's separate and community property to cash, bank accounts, and a coin collection. Excluded from the definition were a 1962 Chevrolet pickup truck, miscellaneous personal property, two annuity certificates, a Bache Halsey Stuart Shields Investment Account, and a promissory note payable to the testator, all of which were properties not specifically devised under any section of the will.

■ There is a presumption that the testator intends to dispose of all of his estate and not die intestate. *Shriner's Hosp. for Crippled Children v. Stahl,* 610 S.W.2d 147 (Tex.1980). Although the law does not favor a construction that results in intestacy, the court cannot make a new will, nor include property that is not within its terms, nor supply a residuary clause when one is not included. *Kaufhold v. McIver,* 682 S.W.2d 660 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

■ We conclude that the term "loose monies" is ambiguous under the circumstances shown, which created a fact issue precluding summary judgment. When an ambiguity exists regarding what the testator intended to be devised, it is usually regarded as a mixed question of law and fact, which should properly be submitted to the fact finders. *Kelley v. Harsch,* 161 S.W.2d 563, 567 (Tex.Civ.App.—Austin 1942, no writ).

Where the meaning of the words used in a will is unclear, extrinsic evidence is generally admissible to show the sense in which the words were used by the testator. *In re Estate of O'Hara,* 549 S.W.2d 233 (Tex.Civ.App.—Dallas 1977, no writ). The appellees filed a certified copy of the Inventory, Appraisement, and List of Claims of the testator's estate to show what property was included in the estate at the time of the testator's death; however, there was no evidence to show what property the testator owned at the time the will was executed, or what property the testator

intended to devise by the use of the term "loose monies."

Point of error four is sustained.

 We also sustain point of error five, wherein the appellants maintain that the trial court erred in holding that the term "MMCD(6)" means the five certificates of deposit listed in the inventory. The term MMCD(6) is likewise ambiguous because there is no evidence of the testator's intent in using this term. Even if the MMCD can be construed as a symbol of abbreviation for certificates of deposit (*M*oney *M*arket *C*ertificates of *D*eposit), the inventory listed five, not six, certificates of deposit, and there was no evidence that the testator disposed of one of the certificates of deposit before his death.

The judgment is affirmed in part, and reversed and remanded in part for a trial on the issues of what the testator intended by the terms "loose monies" and "MMCD(6)."