## CIRCUIT COURT OF ARLINGTON COUNTY

Lawrence Allan Rudwick

v.

Nancy R. Lloyd,
Executrix

October 13, 2005

Case No. (Chancery) 05-86

BY JUDGE JAMES F. ALMAND

In this case, the Court must determine whether the will signed by Regina E. Rudwick on April 3, 2001, was duly executed, whether she had sufficient testamentary capacity at the time the will was executed, and whether the will was the product of undue influence.

Having taken the matter under advisement and given the opportunity to review the exhibits, evidence, and arguments of the parties and the proposed findings of fact and conclusions of law submitted by the parties, I issue the following opinion resolving the outstanding issues.

*Factual and Procedural Background*

Regina Rudwick executed the contested will on April 3, 2001. The will left $100,000 to Regina Rudwick's son, Lawrence Rudwick, and the remainder of her sizable estate to her daughter, Nancy Lloyd. The will was prepared by Theresa Mihalik, a divorce lawyer who had represented Regina Rudwick in her recent divorce proceedings with her husband, Bernard Rudwick. Ms. Mihalik had advised Regina Rudwick and Nancy Lloyd that Ms. Rudwick should have a new will since her old one left everything to her husband, whom she was in the process of divorcing. Ms. Mihalik had drafted the will on April 2, 2001, at the request of Ms. Lloyd, who told Ms. Mihalik that her mother wanted to draft a new will that left $50,000 to Lawrence Rudwick and the remainder of the estate to Ms. Lloyd. On April 3, 2001, Ms. Lloyd drove her mother to Ms. Mihalik's office, whereupon Ms. Mihalik showed them into a conference room and allowed Regina Rudwick to read the will on her own. When Ms. Mihalik returned, either Ms. Lloyd or Regina Rudwick told Ms. Mihalik that a change to the will was desired to increase the bequest to Lawrence from $50,000 to $100,000. Ms. Mihalik made the change to the document, gave it to Regina Rudwick to read once more, and then called three members of her staff into the conference room to witness and notarize Regina Rudwick's execution of the will.

In his Bill of Complaint, Lawrence Rudwick challenges the will on the grounds that it was not properly executed, that Regina Rudwick lacked testamentary capacity at the time of the signing, and that the will was the product of undue influence by Nancy Lloyd.

During the eight-day trial stretching from August 1 to August 11, 2005, the Court heard testimony from thirty witnesses regarding Regina Rudwick's mental state, her relationship with her children, and the circumstances surrounding the execution of her last will. The Court has reviewed counsel's proposed findings of fact and conclusions of law, evaluated the evidence and testimony presented at trial, and examined the relevant case law. For the reasons set forth below, the Court concludes that the will was properly executed, that Regina Rudwick had sufficient testamentary capacity at the time of execution, and that she was not subject to undue influence on the part of her daughter, Nancy Lloyd.

*Due Execution of the Will*

For a will to be valid, it must be signed by the testator in the presence of two competent witnesses, present at the same time, both of whom shall subscribe the will in the presence of the testator. *See* Va. Code § 64.1-49. The burden of

proving that a will has been executed in the manner required is upon the proponent of the will. *Triplett's Ex'r v. Triplett*, 161 Va. 906, 916, 172 S.E. 162, 166 (1934). A will can be self-proved by the acknowledgement of the testatrix and the affidavits of attesting witnesses that are attached or annexed to the will. Va. Code § 64.1-87.1.

In this case, the written will was signed by Regina Rudwick in the presence of three witnesses, all of whom were present at the same time and who subscribed in the presence of one another and the testatrix. As Theresa Mihalik testified, on April 3, 2001, after allowing Regina Rudwick and Ms. Lloyd time to read through the will and make any changes or corrections, she asked four members of her staff to enter the conference room to witness and notarize the execution of the will. The testimony of two of the witnesses, the notary, and Nancy Lloyd supported the due execution of the will. Additionally, the will was self-proved through a clause contained in the will that substantially complied with the requirements set out in Va. Code § 64.1-87.1. As such, the Court is satisfied by a preponderance of the evidence that the will was properly executed in compliance with the statutory requirements.

### Testamentary Capacity

"Testamentary capacity is the term used to describe the degree of mental capacity required for the valid execution of a will." *Gibbs v. Gibbs*, 239 Va. 197, 199, 387 S.E.2d 499, 500 (1990), citing Va. Code § 64.1-47. The proponent of a will bears the evidentiary burden of proving the existence of testamentary capacity by a preponderance of evidence. *Gibbs*, 239 Va. at 199. Testamentary capacity existed at the time of execution if the testatrix was capable of recollecting her property, the natural objects of her bounty and their claims upon her, understood the business about which she was engaged, and how she wished to dispose of her property. *Thomason v. Carlton*, 221 Va. 845, 852, 276 S.E.2d 171, 175 (1981). Testimony of witnesses as to the mental capacity of the testatrix at the time of execution carries great weight. *Id.* at 853.

The proponent of the will is entitled to a presumption that testamentary capacity existed by proving compliance with all statutory requirements for the valid execution of the will. *Gibbs*, 239 Va. at 200. Once this presumption is established, the contestant bears the burden of going forward with evidence to overcome this presumption, although the burden of persuasion remains with the proponent. *Id.*, citing *Redford v. Booker*, 166 Va. 561, 569-70, 185 S.E. 879, 883 (1936).

The contestant in this case, Lawrence Rudwick, alleges that Regina Rudwick did not have sufficient testamentary capacity on April 3, 2001. In support of this allegation, Lawrence Rudwick brought forth a number of

witnesses who testified regarding Regina Rudwick's mental condition in 2001, as well as experts who testified as to whether Regina Rudwick was suffering from Alzheimer's disease or a mental deficiency during this period. To rebut the claim that Regina Rudwick lacked testamentary capacity, the will proponent, Nancy Lloyd, brought forth her own series of witnesses and experts, who testified that Regina Rudwick was not suffering from any debilitating mental deficiencies when she signed the will on April 3, 2001.

The Court has considered the testimony and evidence presented by both parties and finds that while there is some evidence that raises concerns regarding Regina Rudwick's mental condition prior to the date of execution, there is insufficient evidence to conclude that any mental deficiency had progressed to the point where she lacked testamentary capacity on the date that she signed her will. The evidence shows that, at most, Regina Rudwick was suffering from the early stages of Alzheimer's or mild dementia in the spring of 2001. However, even a finding of dementia or early Alzheimer's would not be dispositive of the issues in this case. "Neither sickness nor impaired intellect is sufficient, standing alone, to render a will invalid." *Tabb v. Willis*, 155 Va. 836, 859, 156 S.E. 556, 564 (1931). The expert testimony in this case made clear that the early stages of Alzheimer's disease were actually a good time to write out a will, so as to allow an individual to get his or her affairs in order before the disease progressed to the point of incapacity.

The Court withheld its ruling on Respondent's motion to exclude expert opinion concerning testamentary capacity and undue influence, while permitting the testimony pending the ruling. The Court rules that such testimony is admissible but not dispositive in this case, given the vast amount of evidence of Regina Rudwick's condition from people, both lay and medical, who saw her before, on, and after the date of execution of her will.

The Respondent presented a number of witnesses who testified as to their observations of Regina Rudwick in early 2001. Perhaps most relevant was the testimony of Theresa Mihalik, who served as the divorce attorney for Regina Rudwick and also drafted the will at issue in this case. Ms. Mihalik testified that, throughout March of 2001, she spoke to both Ms. Lloyd and Regina Rudwick regarding the Property Settlement Agreement with Bernard Rudwick. Ms. Mihalik stated that Regina Rudwick was involved in identifying the relevant assets for purposes of the Agreement and that she signed the Agreement on March 23, 2001.

Having worked with Regina Rudwick on the Property Settlement Agreement, Ms. Mihalik stated that she had no concern about a lack of mental capacity on her client's part when she came in to sign the will on April 3, 2001. She led Ms. Lloyd and Regina Rudwick into the conference room and told them

to read over the document before signing it. When Ms. Mihalik returned, either Regina Rudwick or Ms. Lloyd told her that a change needed to be made to the will, as Regina Rudwick wanted the bequest to Lawrence to be increased from $50,000 to $100,000. Ms. Lloyd testified that it was her mother who told her lawyer to increase the amount of the bequest. This is clear evidence that Regina Rudwick read her will and understood the scope of her property, the objects of her bounty, and how she wished to dispose of her property.

The Court takes note of the fact that Ms. Mihalik's testimony was unclear as to whether it was Ms. Lloyd or Regina Rudwick that actually verbalized the increase in the bequest to Lawrence Rudwick. However, given the contestant's theory of the case, it is not credible that Ms. Lloyd would have suggested or unilaterally decided to take money out of her own bequest to give to her brother. The Court concludes from the evidence, including Nancy Lloyd's testimony, that Regina Rudwick made this decision, whether it was she or Ms. Lloyd who actually told Ms. Mihalik about this change in the will.

The amount of the bequest was also consistent with Lawrence's requests to his mother and father in January of 2001, when he asked his parents on separate occasions to lend him $100,000. This stands as further corroboration that Regina Rudwick had sufficient testamentary capacity on April 3, 2001, and that she understood the nature of the actions she was undertaking, as well as how she wanted her property distributed to her children. The Court found Nancy Lloyd to be a credible witness regarding her testimony of her mother's wishes concerning the will and her mental and physical condition at the time the will was signed.

Jeffrey Novak also testified regarding Regina Rudwick's mental state in 2001. Mr. Novak met with Regina Rudwick and Ms. Lloyd in April 2001 regarding their desire to bring a trust accounting suit against Bernard Rudwick. Mr. Novak testified that Regina Rudwick understood the nature of the matters discussed between them and made specific requests regarding against whom she wanted to bring suit. She also explained the underlying facts of the suit to Mr. Novak and executed an affidavit in support of her complaint. Mr. Novak stated that he would not have allowed Regina Rudwick to sign any of these sworn documents if he had believed that she did not have the capacity to understand the relevant issues or what she was signing.

Mr. Novak did begin to question Regina Rudwick's mental condition in late June 2001, as she seemed confused during their conversations. On July 27, 2001, Mr. Novak met with her to discuss his decision to seek the appointment of a guardian or conservator. However, during his meeting, Mr. Novak's concerns were somewhat alleviated by Regina Rudwick's positive state, as she was fully able to discuss these matters with Mr. Novak. Mr. Novak characterized her

condition as "episodic incidents of confusion," which is consistent with the testimony of other witnesses in this case. As his testimony illustrated, any bouts of confusion or memory loss suffered by Regina Rudwick were neither severe nor persistent until well after the signing of her will.

Gillian Rivera, a manager of the SunTrust bank where Regina Rudwick carried out many of her financial affairs, had known Regina Rudwick for many years. She testified that on April 3, 2001, Regina Rudwick met with her to guarantee her signature on stock transfer documents relating to the Property Settlement Agreement with her husband. Ms. Rivera stated that there was nothing abnormal about Regina Rudwick's behavior on that date, which was the same day as the will execution, and that she would not have guaranteed Regina Rudwick's signature if she had noticed any problems.

Anne McKnight also substantiated the fact that Regina Rudwick was in relatively good mental health in early 2001. Ms. McKnight was the family therapist, who met with Regina Rudwick for sessions in January of 2001, and testified that she had not noticed any signs of confusion or mental difficulties during their conversations. A number of witnesses recounted her lucid interval which occurred on July 24, 2001, at the SunTrust offices. Paul Hartley, a trust officer at SunTrust, met with Regina Rudwick on July 24, 2001, for a two-hour meeting regarding the creation of a trust. He testified that she was familiar with her assets, understood and remembered their conversation, and that she was not confused or impaired when he spoke with her. Mr. Hartley added that he would not have created a trust for Regina Rudwick if he had any concerns about her mental acuity.

The Complainant brought forth a number of witnesses who also testified as to their observations of Regina Rudwick. Kathleen McBride, Regina Rudwick's former daughter-in-law, sent an e-mail to Ms. Mihalik on February 21, 2001, stating that Regina was unable to negotiate anything on her own. However, on April 1, 2001, Ms. McBride sent another e-mail to Ms. Mihalik, saying that Regina was doing much better. Another witness, Miriam Friend, Regina Rudwick's sister, visited with her during the last weekend in March of 2001. Ms. Friend testified that she noticed a change in her sister's ability to engage in conversation and generally function as she had in the past. However, she added that she did not inquire about it or report her concerns to anyone. Much of the testimony indicated that any mental difficulties that Regina Rudwick may have had during this period were relatively mild and intermittent. While the testimony did raise a small concern as to whether Regina Rudwick was suffering from Alzheimer's disease or some mental defect in early 2001, there was simply not enough evidence to conclude that Regina Rudwick lacked testamentary capacity on April 3, 2001.

In addition to the testimony of those who personally knew Regina Rudwick, both parties presented a number of doctors and medical experts who postulated as to her mental condition in April of 2001. The Complainant presented Dr. David Trinkle, who had examined Regina Rudwick's medical history and opined that she was mentally impaired at the time of the will signing. The Court also heard from Dr. David Sayles, who met with Regina Rudwick in October of 2001, and who testified at trial that she was suffering from dementia and Alzheimer's disease during the time in question. However, none of the experts could testify that Regina Rudwick lacked testamentary capacity on April 3, 2001.

The Respondent also brought forth a number of doctors to testify on her behalf. Dr. Erica Hwang had been treating Regina Rudwick since 2000 and administered a Mini Mental State Examination ("MMSE") on May 14, 2001. Regina Rudwick scored a 26 out of 30 on the MMSE, indicating that she was not suffering from even mild dementia. On July 11, 2001, Regina Rudwick was admitted to the Virginia Hospital Center after an examination by Dr. Lillian Hunt, who found her to be confused and disoriented. The next day, Dr. Eric Czander performed a complete neurological examination on Regina Rudwick and found that she was fully aware and able to follow his instructions. She also scored a 28 out of 30 on the MMSE. The following day, she underwent a neuropsychological examination that indicated that she was suffering from the early stages of dementia. According to the Respondent's expert, Dr. Randolph Frank, patients who suffer from this relatively mild form of dementia suffer from short-term memory defects, but their reasoning faculties are not impaired and they maintain the ability to make decisions on their own. Finally, Dr. Julian Adams, who had examined Regina Rudwick on a number of occasions, reported on July 27, 2001, that she was competent to make decisions for herself.

While the testimony presented in this case is certainly in conflict, it is clear to the Court that the Respondent has established Regina Rudwick's testamentary capacity by a preponderance of the evidence. The Court evaluated the testimony of all of the experts and medical professionals, but did not find their testimony to be dispositive either way. None of these experts treated Regina Rudwick during the spring of 2001 when she signed the will. The most compelling evidence was presented by Ms. Mihalik, Mr. Novak, and Ms. Rivera, all of whom gave testimony regarding their personal observations of Regina Rudwick at or around the time that she signed the will. Each one had professional duties and responsibilities regarding Regina Rudwick, and each stated that they would not have acted if they had any question as to their client's mental stability. Nancy Lloyd's testimony was also consistent with these witnesses' testimony that Regina Rudwick made her own decisions regarding

the will and its contents. Additionally, the testimony regarding the increase in the bequest to Lawrence Rudwick from $50,000 to $100,000 is evidence that Regina Rudwick had the capacity to understand the nature of her property, that she knew who the natural objects of her bounty were, that she understood the action she was undertaking, and that she was well aware of how she wished to dispose of her property. The Court concludes that Regina Rudwick had the requisite capacity to execute the will on April 3, 2001.

### Undue Influence

For a will to be overturned on the grounds of undue influence, the Court must find a level of influence so great as to control the testator's mind and actions, amounting to coercion or duress. *Jarvis v. Tonkin*, 238 Va. 115, 120, 380 S.E.2d 900, 903 (1989), citing *Mullins v. Coleman*, 175 Va. 235, 239, 7 S.E.2d 877, 878 (1940). The party seeking to create a presumption of undue influence must establish each of the required elements by clear and convincing evidence. *Id.* A presumption of undue influence arises where the will contestant proves by clear and convincing evidence that "(1) [T]he testator was enfeebled in mind when the will was executed, (2) the requisite confidential or fiduciary relationship was accompanied by activity in procuring or preparing the favorable will, and (3) the testator previously had expressed a contrary intention to dispose of his property." *Martin v. Phillips*, 235 Va. 523, 528, 369 S.E.2d 397, 400 (1988).

The Court finds that the second and third factors of the test have been met by the Complainant. Under the second factor, there must be a confidential or fiduciary relationship accompanied by procurement or preparation of the will in question. While the relationship between a mother and daughter is not a confidential or fiduciary association *per se*, there is sufficient evidence to find that the relationship between Ms. Lloyd and Regina Rudwick rose to that level. Not only did Ms. Lloyd live in the same house as her mother for a number of months during the relevant period in this case, but she was closely involved in Regina Rudwick's medical, legal, and financial matters. Additionally, the Court finds that Ms. Lloyd was active in the preparation of the will, as it was she who called Ms. Mihalik and informed her of the details regarding her mother's new will, albeit at the request of her mother. Ms. Lloyd also went with her mother to Ms. Mihalik's office and may have minimally assisted in the reading and signing of the will. The Court believes the evidence clearly demonstrated that there was a confidential relationship between Ms. Lloyd and Regina Rudwick and that Ms. Lloyd was active in the preparation of the will.

The third factor has also been met in this case. A reciprocal will dated November 29, 1985, was signed by Regina Rudwick and would have split her entire estate equally between the two children in the event that her husband, Bernard Rudwick, predeceased her. Despite the fact that Regina Rudwick had separated from her husband since that time, the 1985 will still stands as clear and convincing evidence of a contrary intention to dispose of the property equally between her two children.

The first factor required to establish a presumption of undue influence is that the testatrix was "enfeebled in mind" at the time that the will was executed. The Complainant did not establish this factor. Based on the same evidence discussed in the preceding analysis of testamentary capacity, the Court is of the opinion that Regina Rudwick was not enfeebled in mind when she executed her will on April 3, 2001. A number of witnesses, including Ms. Mihalik, Mr. Novak, and Ms. Rivera, established that Regina Rudwick was aware of what was going on around her and that she was not suffering from any debilitating mental condition. While the expert and medical testimony conflicted on a number of issues, the fact remains that Regina Rudwick's treating physicians at no time found her unable to make decisions for herself or that she was suffering from a severe mental impairment. Even if Regina Rudwick was suffering from a mild mental impairment or the beginning stages of Alzheimer's disease, that alone does not establish that she was "enfeebled in mind" when she executed her will.

The Court finds that the Complainant has failed to establish by clear and convincing evidence that Regina Rudwick was enfeebled in mind and, therefore, concludes that he is not entitled to any presumption regarding undue influence. Even if such a presumption was established, it was sufficiently rebutted by the witnesses who testified on behalf of the Respondent. Ms. Mihalik testified that she had never observed Ms. Lloyd attempting to influence her mother's decisions in regards to the will. Anne McKnight noted that, while Regina Rudwick and her daughter had a close relationship, there was nothing unusual or inappropriate in how they treated one another. While Ms. Lloyd did live with her mother during the relevant time period in this case, there is no evidence that Ms. Lloyd kept Regina isolated or prevented her from exercising her own free will. Rather, as Ms. Lloyd testified, her role was largely one of assisting her elderly mother, and Regina Rudwick often met with her son, Lawrence, as well as with acquaintances such as Kathleen McBride and Miriam Friend. The testimony in this case collectively established that Ms. Lloyd did not exert undue influence on her mother such as to rise to the level of coercion or duress. Accordingly, the Court holds that there was no undue influence in this case.